**Robert Mont THOMAS II, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–94–00996–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 17, 1995.

Jeannette G. Shane, Manvel, for appellant.

Jerome Aldrich, David Bosserman, Angleton, for appellee.

Before Oliver–Parrott, C.J., and O'CONNOR and TAFT, JJ.

## OPINION

OLIVER–PARROTT, Chief Justice.

Appellant, Robert Mont Thomas, was charged by indictment with the felony offense of failure to stop and render aid. Appellant waived a jury trial. After finding appellant guilty, the trial court assessed punishment at two years imprisonment. We affirm.

### Background

The evidence, viewed in the light most favorable to the verdict, reveals the following. On December 14, 1993, at approximately 4:00 p.m., the complainant was driving her car eastbound on W. House Street in Alvin, Texas. A green Chevy Camaro, travelling southbound on S. Hardie Street, ran a stop sign and collided with the complainant's car. Immediately after the collision, the Camaro quickly backed up and left the accident travelling west on House Street. The complainant's head hit the dash, causing a lump and generalized head pain. The complainant's car was totalled for a value of $1,500.

Kimberly Hock, who was driving behind the complainant, saw the collision and witnessed the Camaro back up and pass by her travelling west on E. House St. Within an hour after the accident, Hock viewed a photograph lineup of six white [1] males and identi-

fied appellant as the driver of the Camaro.[2] Hock also identified appellant in court.

The police arrived at the scene after being summoned by a service station attendant. Because a friend volunteered to take her to the hospital, the complainant declined an ambulance. The police accident report indicates that the complainant had a "non-incapacitating injury."

Approximately one hour after the accident, the complainant went to a hospital where she was examined by a physician and diagnosed with a "mild head injury." The complainant was discharged with written instructions to get rest, have someone check her every three or four hours, take Tylenol, and see a doctor if she developed certain symptoms. Although the complainant did not take Tylenol or aspirin, she did go to bed when she arrived home.

The trial court found appellant guilty as charged. At the punishment stage of the trial, appellant admitted that he was driving the Camaro when it collided with the complainant, but that he got out of the car after the collision, and did not leave the scene until he saw that the complainant was alright.

### First point of error

In his first point of error, appellant contends that the State did not prove beyond a reasonable doubt each and every element of the offense of failure to stop and render aid. TEX.REV.CIV.STAT.ANN. art. 6701d, § 38 (Vernon 1977). In particular, appellant contends that the State failed to present sufficient evidence that the complainant received an "injury" as a result of the accident.

■ Our standard for reviewing the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781,

---

**1.** Although all six men in the lineup were Caucasian, appellant alleges that at least two of them looked Hispanic. Ms. Hock agreed.

**2.** Although appellant was not wearing glasses the day of the accident, he was wearing glasses in the photospread.

2789 (1979); *Geesa v. State,* 820 S.W.2d 154, 163 (Tex.Crim.App.1991).

Section 38(a) of article 6701d provides:

The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of Section 40. Every such stop shall be made without obstructing traffic more than is necessary.

Section 40 provides:

The driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle which is driven or attended by any person shall give his name, address, and the registration number of the vehicle he is driving and shall upon request and if available exhibit his operator's, commercial operator's, or chauffeur's license to the person struck or the driver or occupant of or person attending any vehicle colliding with and shall render to any person injured in such accident reasonable assistance, including the carrying, or the making of arrangements for the carrying, of such person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person.

TEX.REV.CIV.STAT.ANN. art. 6701d, § 40 (Vernon 1977).

Thus, sections 38 and 40 impose a duty on a driver involved in an accident to stop and take certain steps. *Steen v. State,* 640 S.W.2d 912, 914–15 (Tex.Crim.App.1982). Section 38(b) imposes criminal penalties for failing to comply with section 38(a). TEX. REV.CIV.STAT.ANN. art. 6701d, § 38(b) (Vernon 1977).

The elements of an offense under section 38(b) are:

1. a driver of a vehicle
2. involved in an accident
3. resulting in injury or death of any person
4. intentionally and knowingly
5. fails to stop and render reasonable assistance.

*Steen,* 640 S.W.2d at 915. Here, appellant contends that the state failed to prove that the accident resulted in "injury" to a person.

■ Although article 6701d does not define the word "injury," section 10(e) of article 6701d defines the phrase "personal injury" as a "wound or injury to any part of the human body which necessitates treatment." TEX. REV.CIV.STAT.ANN. art 6701d, § 10(e) (Vernon 1977). Because the text of section 38 uses the term "injury" instead of "personal injury," the State contends that the definition of "personal injury" in section 10(e) does not apply to section 38.

In construing article 6701d, we are guided by several rules of statutory interpretation. We presume that the entire statute is intended to be effective. TEX.GOV'T CODE ANN. § 311.021(3) (Vernon 1988). Furthermore, in determining whether the statute is ambiguous, we consider laws on the same or similar subjects, the consequences of a particular construction, and the title or caption of the statute. TEX.GOV'T CODE ANN. § 311.023(4)–(7) (Vernon 1988).

For the reasons that follow, we disagree with the State's contention that the definition of "personal injury" in section 10(e) does not apply to section 38. First, section 38 is titled "Accidents involving death or *personal injuries.*" (Emphasis added.) Second, section 147(4) provides that a person arrested for failure to stop in the event of an accident "causing personal injury" must immediately go before a magistrate. TEX.REV.CIV.STAT. ANN. art 6701d, § 147 (Vernon 1977). Section 147(4) relates to the offense set out in section 38. When interpreting the intent and meaning of a statute, we follow the plain language of the statute. *Lundy v. State,* 891 S.W.2d 727, 729 (Tex.App.—Houston [1st Dist.] 1994, no pet.). Consequently, we interpret the definition of "personal injury" to apply to section 38.

Under the definition of "personal injury" the State must prove that (1) there was a "wound or *injury* to any part of the human body" which (2) "necessitates treatment"

TEX.REV.CIV.STAT.ANN. art 6701d, § 10(e). (Emphasis added.) "Injury" is not defined in article 6701d. *Id.* Statutory terms which are not defined are given their ordinary meaning. TEX.GOV'T CODE ANN. § 311.011(a) (Vernon 1988); *Rivas v. State,* 787 S.W.2d 113, 115 (Tex.App.—Dallas 1990, no pet.). Resort to legal or other well accepted dictionaries is one way to determine the ordinary meaning of certain terms. *Rivas,* 787 S.W.2d at 115. Webster's defines injury as "the act or result of inflicting on a person or a thing something that causes loss, pain, distress or impairment." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY p. 1164 (1971).

■ Under this definition, there is ample evidence that the complainant was "injured." First, the impact of the collision was so severe that the complainant's head bent back and hit the dash. Second, she immediately complained of her head hurting, and that the accident was "real painful." Such pain satisfies Webster's definition of injury. Additionally, the physician's exam revealed a lump on the complainant's head and a diagnosis of a "mild head injury."

■ Appellant contends that because the complainant was unaware of her injuries, she was not injured. Even if this assertion were supported by the record, ignorance of her injuries would not negate the fact that the complainant was injured. We hold the evidence was sufficient to support the conclusion that the complainant received an "injury."

The second element of "personal injury" is that the "injury" must have "necessitated treatment." TEX.REV.CIV.STAT.ANN. art 6701d, § 10(e). Treatment is not defined in article 6701d. Black's Law Dictionary defines "treatment" as a "broad term covering all the steps taken to effect a cure of an injury or disease; the word including *examination and diagnosis* as well as application of remedies." BLACK'S LAW DICTIONARY 1673 (4th ed. 1968) (emphasis added).

Although she declined both treatment at the scene and ambulance transportation, the complainant did go to the hospital. While at the hospital, she was *examined* by a physi-

cian and *diagnosed* as having a "mild head injury." Additionally, the complainant received medical treatment. Specifically, the physician advised her to rest, take Tylenol if necessary, and monitor herself for various symptoms. The complainant followed the physician's medical treatment. She simply found it unnecessary to take Tylenol. We find sufficient evidence that the complainant received treatment.

Because the complainant received an "injury which necessitated treatment" from the accident, the State proved the element of injury required under section 38. TEX.REV. CIV.STAT.ANN. art 6701d, § 38 (Vernon 1977).

We overrule appellant's first point of error.

### Second and third points of error

Because appellant's second and third points of error both address his identification, they will be considered together.

In his second point of error, appellant asserts that the trial court committed reversible error by overruling appellant's motion to suppress the witness' photospread identification of appellant as the Camaro's driver. Appellant argues that the photospread was impermissibly suggestive and denied appellant due process under the United States Constitution and the Texas Constitution. Specifically, appellant alleges the photospread was overly suggestive because the photospread contained two Hispanic-appearing men, only two or three men with receding hairlines, and only appellant wore eyeglasses. Appellant asserts that the photospread contradicts Hock's description of the driver as a "white male with receding hairline."

In his third point of error, appellant asserts that there was insufficient evidence to sustain the in-court identification of appellant as the driver. Specifically, appellant alleges that Hock's in-court identification was tainted either by the photospread identification or the State's direct examination of Hock. In particular, the prosecutor asked Hock if she saw the driver in court. Before Hock responded, the prosecutor asked, "Is he the gentlemen seated to my left?"

We do not reach the merits of appellant's second and third points of error, because we hold that appellant's testimony at the punishment stage waived any error at the guilt-innocence stage of the trial. *McGlothlin v. State,* 896 S.W.2d 183, 187 (Tex.Crim.App. 1995); *DeGarmo v. State,* 691 S.W.2d 657, 661 (Tex.Crim.App.1985), *cert. denied,* 474 U.S. 973, 106 S.Ct. 337, 88 L.Ed.2d 322 (1985); *Griffin v. State,* 850 S.W.2d 246, 251 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd).

 The *DeGarmo* doctrine is a doctrine of waiver "akin to the doctrine of curative admissibility." *McGlothlin,* 896 S.W.2d at 186. Under this doctrine, the defendant waives any error occurring at the guilt-innocence phase of the trial, if, at the punishment phase of trial, he admits his guilt to the charged offense. *Id.* This includes any right to complain on appeal of in or out-of-court identification and sufficiency of evidence. *Brown v. State,* 617 S.W.2d 234, 236 (Tex.Crim.App.1981).

In *DeGarmo,* the appellant was convicted of murder. He did not testify at the guilt stage of trial, but did testify at the punishment stage, where he admitted his guilt. *Id.* at 660. On appeal, the appellant asserted that the evidence was insufficient to sustain the jury verdict finding him guilty of capital murder. In affirming the trial court's decision, the *DeGarmo* court stated:

> [I]f a defendant does not testify at the guilt stage of the trial, but does testify at the punishment stage of the trial, and admits his guilt to the crime for which he has been found guilty, he has, for legal purposes, entered the equivalent of a plea of guilty. The law as it presently exists is clear that such a defendant not only waives a challenge to the sufficiency of the evidence, but he also waives any error that might have occurred during the guilt stage of the trial.

*Id.* at 661.

The *DeGarmo* doctrine has been repeatedly criticized. *See McGlothlin,* 896 S.W.2d at

192 (Meyers, J.[3], dissenting); *Gordon v. State,* 651 S.W.2d 793, 794 (Tex.Crim.App. 1983) (Teague, J., concurring); *Herbert v. State,* 827 S.W.2d 507, 510–11 (Tex.App.— Houston [1st Dist.] 1992, no pet.) (Cohen, J., concurring). The Court of Criminal Appeals, however, has adhered to the doctrine. *See, e.g., McGlothlin,* 896 S.W.2d at 189. As an intermediate court, we are not at liberty to depart from well established precedent.

■ Here, appellant did not completely "admit his guilt" to the charged offense. Rather, he admitted that he was the driver of the Camaro that collided with the complainant's car, but he denied that the complainant was injured. The parties have not cited, and we have been unable to find, a case applying *DeGarmo* solely on the basis of the defendant's admission of identity. Nevertheless, we believe that the purposes underlying the *DeGarmo* doctrine support its application in this case. As the Court of Criminal Appeals noted in *McGlothlin,* the "basic purpose of trial is the determination of truth." *McGlothlin,* 896 S.W.2d at 187. When a defendant unequivocally admits identity at the punishment stage, he has waived that issue on appeal.

To ensure that appellant made a judicial confession, we must carefully examine the elements of the offense to ensure that the defendant admitted the element in question. *McGlothlin,* 896 S.W.2d at 188. Here, the element at issue is whether appellant was the driver. At the punishment phase of the trial, the appellant answered "yes" when asked if he was the driver of the Camaro when it collided with the complainant's car. Therefore, appellant provided sufficient evidence of identification.

Accordingly, we overrule appellant's second and third point of error.

We affirm the judgment.

---

**3.** Meyers' dissent argued that *DeGarmo* should be overruled because it "forces an accused to give up his right to appeal for the privilege of defending himself at trial." *McGlothlin,* 896 S.W.2d at 192.