969 S.W.2d 464 (1998)
H. Lee CAIN and Wife, Betty Jane Cain, Furniture Crafters, Inc., and Summit Furniture Industries, Inc. (Formerly Wood Designs, Inc.), Appellants,
v.
RUST INDUSTRIAL CLEANING SERVICES, INC. as Successor In Interest to Enclean Environmental Services Group, Inc., Successor In Interest of Sizemore Environmental Group, Inc., Appellees.
No. 06-97-00100-CV.
Court of Appeals of Texas, Texarkana.
Submitted April 1, 1998.
Decided May 1, 1998.
Rehearing Overruled June 16, 1998.
*466 Channy F. Wood, Garner & Stein, Amarillo, for appellants.
Robert L. Scott, Greenville, James A. Hourihan, Hogan & Hartson, L.L.P., Washington, DC, Jeffrey S. George, Hogan & Hartson, Colorado Springs, CO, John P. Kincade, Winstead, Sechrest, Minick, Dallas, for appellees.
Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

OPINION
GRANT, Justice.
H. Lee Cain and Betty Jane Cain, Furniture Crafters, Inc., and Summit Furniture Industries, Inc. (formerly Wood Designs, Inc.), collectively referred to as "Cain," appeal from a summary judgment rendered in favor of Rust Industrial Cleaning Services, Inc., as successor in interest to Enclean Environmental Services Group, Inc., successor in interest of Sizemore Environmental Group, Inc., collectively referred to as "Enclean."
The issues raised on appeal are whether the trial court erred by failing to grant Cain's objections to summary judgment affidavits and whether the trial court then erred by granting Enclean's motion for summary judgment.
Cain contends that there are factual questions that must be answered by a jury and summary judgment is thus improper. Cain, as owner of a furniture manufacturing company, owns land contaminated with arsenic at a level much higher than permitted by state regulation. Adjoining property owned by a railroad was similarly contaminated. The contamination was caused by a previous owner of Cain's property. That owner, Hi-Yield, had manufactured or refined a number of chemicals, including arsenic, at that location for decades, leaving a substantial amount of arsenic in the soil. The railroad hired Enclean to do an environmental remediation of the property[1] by removing soil and adding a chemical (ferrous sulfate) to alleviate the contamination. Cain contends that Enclean performed took these actions negligently and that their negligent performance allowed additional arsenic-laden soil to wash over his property, causing him extensive damages when he was required to close his business and abandon the manufacturing facility.
Cain brought causes of action including negligence, trespass, and nuisance. He contends on appeal that Enclean failed to conclusively establish the failure of these causes of action because there are factual issues remaining to be resolved about Enclean's activities and their impact upon his property.
Cain first contends that the affidavits of Davis L. Ford and Randy Tarpley were improperly considered by the trial court in rendering its judgment and that the court erred by failing to grant his objections to those affidavits. Evidence that has been objected to remains part of the summary judgment proof unless an order sustaining the objection is reduced to writing, signed, and entered of record. Eads v. American Bank, NA, 843 S.W.2d 208, 211 (Tex.App. Waco 1992, no writ).[2] A summary judgment motion is to be decided on the written record. See Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex.1979). If rulings on objections are not reduced to written form, there can be no written record to review. Washington v. McMillan, 898 S.W.2d 392, 397(Tex.App.San Antonio 1995, no writ).
In the present case, there was no written ruling on the objection raised by counsel. Further, the reporter's record of the summary judgment hearing shows only that the court intended to rule at a later date, but does not contain a specific ruling on the objection. The complaint of error regarding *467 their objection therefore fails, and we must review the summary judgment in light of all of the summary judgment evidence, including the affidavits at issue.
Counsel contends that because his contention is one of substance rather than one of form, then the above-cited cases do not apply, and he did not need to raise the issue at the summary judgment hearing or obtain a ruling before bringing the issue on appeal. Despite the apparently clear-cut language used in the cases cited above, there is also a line of cases that equally clearly says that no objection need be raised to a substantive defect in summary judgment evidence, and that error may be claimed to such substantive defects for the first time on appeal.[3] As interpreted by those cases, TEX.R. CIV. P. 166a(f) provides that where a substantive defect exists, then TEX.R.APP. P. 33.1 is abrogated sub silentio, and counsel need not make a timely objection to preserve error for review.
We find this reasoning unpersuasive. The conceptual underpinning for this line of cases is that a document does not constitute evidence, typically because the document is not really an affidavit due to the omission of a signature[4] or lack of a jurat.[5] Thus, the courts in these cases found that it was error to grant a summary judgment based on such fundamentally defective instruments.[6]Sturm Jewelry, Inc. v. First Nat. Bank, Franklin, 593 S.W.2d 813, 814 (Tex.Civ. App.Waco 1980, no writ). This, however, is the type of form error to which the rule requires an objection with an opportunity to correct.
Counsel complains that Ford's affidavit was improper because it did not list Ford's qualifications as an expert and, therefore, that his conclusions that Enclean was not negligent were without foundation and were mere conclusions. A mere legal conclusion does not constitute summary judgment evidence and has been treated by the appellate courts as a substantive error not requiring objection.[7]
In the present case, the expert's affidavit contains a summary of his experience working as an environmental engineer for over thirty years with hazardous waste sites, and his educational background with a master's and doctoral degree in environmental health engineering. He then specified an extensive list of documents that he reviewed in his examination, including the plan approved by the Texas Water Commission and the Commission's subsequent approval and closure of the site. Based upon his review, he concluded that Enclean acted in accordance with the State-approved plan for remediation and that there was nothing to indicate that any act by Enclean contaminated any adjacent properties.
As an expert in the field, he would have the ability to determine whether the remediation *468 company complied with the proper standard of care. Indeed, an expert is required in a case involving the application of a specialized branch of science, such as this one, in order to provide an opinion about whether appropriate procedures were used by the remediator. See E.I. du Pont de Nemours and Co. v. Robinson, 923 S.W.2d 549, 559-60 (Tex.1995).
This affidavit sufficiently sets out the expert's qualifications, the relevant facts, and his conclusions based upon those facts. It is competent summary judgment proof.
Counsel also argues that Tarpley's affidavit (which set out his opinion of the value of the real property) is insufficient because he did not show how he came to have such knowledge of the property or of the manufacturing operation. Counsel has not directed this court to authority requiring Tarpley not only to state that he has such personal knowledge about the realty, but also to explain how he obtained the personal knowledge about the property. Further, the profits obtained from the manufacturing operation are not mentioned in his affidavit, and Cain's complaint on that basis is irrelevant.
In reviewing a summary judgment granted in favor of a defendant,[8] we look to see whether the movant has established that he is entitled to summary judgment as a matter of law.[9] Because the movant bears the burden of proof, all conflicts in the evidence are disregarded, evidence favorable to the nonmovant is taken as true, and all doubts as to the genuine issue of material fact are resolved in favor of the nonmovant.[10]
The underlying groundwork for this case is as follows.
Cain's property was heavily contaminated with arsenic because it had previously been used by a chemical company to manufacture arsenic acid. Complaints of contamination began in the 1960s. Cain leased the property initially in 1975 (later purchasing it) and knew by 1983 that extremely high levels of arsenic existed on the west side of the property. (Cain was involved in extended litigation with the previous owner, the Hi-Yield Corporation, over this very subject).
The adjoining property, owned by a railroad, was similarly contaminated. In accordance with the directives of the Texas Water Commission, the railroad retained Enclean to clean up the property. (Cain was apparently similarly ordered to clean up his own property, but refused to do so).
The elements of the common-law doctrine of negligence are well established. They are: 1) a legal duty owed by one person to another; 2) a breach of that duty; 3) that the breach was a proximate cause of the injury; and 4) actual injury. Alm v. Aluminum Co. of America, 717 S.W.2d 588, 595 (Tex.1986); see also Greater Houston Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex.1990) (restated as three elements).
Cain brought suit based upon his assertion that Enclean dug up arsenic-laden soil and that a heavy rainstorm in late October 1991 washed the arsenic-laden soil onto his property.[11] He argues that the digging was done negligently because Enclean did not set up barriers of some sort to keep the newly exposed soil from washing across his property. The remediation of the property was partially accomplished through removal of the contaminated dirt and partially through the mixing of ferrous sulfate with the remaining soil and with soil imported for the purpose. Cain alleged that the contaminated soil was washed down and over his property and that he recognized this because of the distinctive orange markings left by the sulfate as it dried. Thus, he contends that *469 additional arsenic-laden soil was added to his property as a result of negligent remediation by Enclean.
Cain specifically contends that there are issues of fact about whether "surface water, soil, and chemicals" came onto his property from the railroad property. Although there is summary judgment proof that surface water came across his property, that is not the material issue. Indeed, a lower landowner has a duty to receive the natural flow of surface water. Bunch v. Thomas, 121 Tex. 225, 49 S.W.2d 421 (1932); Jefferson Cty. Drainage Dist. No. 6 v. Lower Neches Valley Auth., 876 S.W.2d 940, 950 (Tex.App.Beaumont 1994, writ denied).[12] It must be shown that harmful soil and harmful chemicals came onto his property using the water as a medium of transport, as a result of the defendant's wrongful act.
Enclean provided summary judgment evidence that it did not begin plowing the area uphill from Cain until after the heavy rain that allegedly caused the runoff. Enclean's evidence shows that the ferrous sulfate was piled on the property before the rain. The orange material photographed by Cain and described by him and his employees as washing up onto his property is the residue from the ferrous sulfate (which is not toxic). Enclean also provided evidence that, prior to beginning the remediation, it had dug a ditch twenty feet wide along the western boundary of the property to provide drainage in the event of a rainstorm.
Barnett, Enclean's foreman managing the work on the site, stated in his deposition that four inches of rain fell during the afternoon in question onto already saturated soil and that some runoff at that time occurred but at a time before Enclean broke ground at that end of the property. Barnett also pointed out that, at the time of the rain, they were working only on zone 3 and zone 4, which had runoff toward the east, and not in the direction of Cain's property. The expert's (Ford) affidavit states that Enclean complied with all of the requirements of the Texas Water Commission and that his review revealed no evidence that Enclean contaminated any adjacent properties, based upon a number of documents, including the depositions relied upon by Cain in responding to Enclean's motion for summary judgment.
In response, Cain points to his own deposition testimony, stating that the buildings were stained by the ferrous sulfate. Cain also argues that it takes no expert testimony to show that water runs downhill and that contaminated soil is obviously washed along with the water. Cain misses the point in this respect. His suit is against Enclean, not the property owner. Cain must show that some act by Enclean was a cause of the harm. In this respect, the only thing that Enclean could have done that might have arguably increased the amount of contaminated soil moving across the property would have been to plow up the ground in the appropriate flood zone before the rain.[13]
Cain testified by deposition that the water passed over torn-up land on the railroad property, that the ferrous sulfate all washed over to his property, and that Enclean had pulverized some undefined portion of the property before the rain. This statement does not show that the portion of the property that drained onto Cain's property was plowed before the rain. The mere fact that water drained across the railroad's property onto Cain's property does not show that acts by Enclean added an additional damage factor unless there is some proof that additional arsenic was added to Cain's soil by that drainage. There is no other cited evidence that would tend to controvert Enclean's evidence.
Enclean provided expert testimony stating that only the ferrous sulfate was washed across. The clearest shortfall in Cain's case is the total absence of contradictory proof that any arsenic-laden soil came onto his property. Cain's counter to that position is that if the ferrous sulfate washed across, surely other materials did too. That *470 does not necessarily follow. Cain has provided no evidence that arsenic-laden soil washed onto his propertywhich might be shown by a soil analysis or possibly by other means. Instead, he wants this court to indulge a presumption that if the ferrous sulfate came, so did the dirt. He further wants this court to presume that if dirt came across, it was contaminated. As noted above, he has also provided no direct evidence that Enclean had done anything to the relevant portion of the property that would have increased any runoff of water before the rain or that any dirt was so transported. He has provided no evidence that any contaminated dirt was washed onto his property or that if any was washed across his property, the amount was increased as a result of some act by Enclean.
In the absence of any evidence that the claimed act occurred or of some damage to Cain's property from contaminated soil, negligence cannot be shown.
Trespass to real property requires a showing of an unauthorized physical entry onto the plaintiff's property by some person or thing. Railroad Comm'n of Texas v. Manziel, 361 S.W.2d 560, 567 (Tex.1962); Crow v. TRW, Inc., 893 S.W.2d 72, 77 (Tex. App.Corpus Christi 1994, no writ).
There are cases holding that every unauthorized entry upon land of another is a trespass even if no damage is done and that "the intent or motive prompting the trespass is immaterial." Trinity Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 827 (Tex.1997), citing McDaniel Bros. v. Wilson, 70 S.W.2d 618, 621 (Tex.Civ.App.Beaumont 1934, writ ref'd). A trespass to real property is committed where a person enters another's land without consent or alternatively the unauthorized entry upon the land of another. Stone Resources, Inc. v. Barnett, 661 S.W.2d 148 (Tex.Civ.App.Houston [1st Dist.] 1983, no writ). The entry need not be in person but may be made by causing or permitting a thing to cross the boundary of a property. Glade v. Dietert, 156 Tex. 382, 295 S.W.2d 642, 645 (1956). The courts have uniformly held that once a plaintiff proves right of ownership of the property or a lawful right of possession and an entry by the defendant, the burden of proof falls on the defendant to then plead and prove consent or license as justification for the entry. Stone Resources, 661 S.W.2d at 151.
In the present case, however, Cain specifically complains that the trespass was of soil contaminated with the toxic substance of arsenic, because of negligent acts by Enclean. As noted above, there is no evidence that Enclean acted negligently or that any contaminated soil entered Cain's property because of Enclean's action. Enclean has successfully met its burden to disprove an element of the offense, and summary judgment was proper.
Cain also contends that the trial court erred in entering summary judgment against his claim of nuisance. Courts have broken actionable nuisance into three classifications: negligent invasion of another's interests; intentional invasion of another's interests; or other conduct, culpable because abnormal and out of place in its surroundings, that invades another's interests. City of Tyler v. Likes, 962 S.W.2d 489, 502-04, (Tex.1997); see Bible Baptist Church v. Cleburne, 848 S.W.2d 826, 829 (Tex.App.Waco 1993, writ denied). A nuisance which impairs the comfortable enjoyment of real property may give rise to damages for "annoyance and discomfiture." Id.; Daniel v. Fort Worth & R.G. Ry., 96 Tex. 327, 72 S.W. 578, 579 (1903); accord, Baltimore & Potomac Railroad Co. v. Fifth Baptist Church, 108 U.S. 317, 335, 2 S.Ct. 719, 731, 27 L.Ed. 739 (1883).
A nuisance may occur in one of three different ways: (1) physical harm to property, such as encroachment of a damaging substance or by the property's destruction; (2) physical harm to a person on his or her property, such as by an assault to his or her senses or by other personal injury; and (3) emotional harm to a person from the deprivation of the enjoyment of his or her property, such as by fear, apprehension, offense, or loss of peace of mind. Ward v. Northeast Texas Farmers Co-op Elevator, 909 S.W.2d 143, 151 (Tex.App.Texarkana 1995, writ denied); Maranatha Temple, Inc. v. Enterprise Products Co., 893 S.W.2d 92 (Tex.App. Houston [1st Dist.] 1994, writ denied).
*471 Under any version of events postulated, the complete absence of any summary judgment proof to contest Enclean's evidence that no toxic arsenic-laden soil was deposited on Cain's property means that the nuisance claim likewise fails.
The judgment is affirmed.
NOTES
[1] The remediation was required by the Texas Water Commission, which had considerable and understandable trepidation about enormous quantities of arsenic migrating into local underground water.
[2] See generally TEX.R.APP. P. 33.1; Washington v. McMillan, 898 S.W.2d 392, 397 (Tex.App.San Antonio 1995, no writ); Williams v. Conroe Indep. Sch. Dist., 809 S.W.2d 954, 957 (Tex.App. Beaumont 1991, no writ); Guzman v. Solis, 748 S.W.2d 108, 111 (Tex.App.San Antonio 1988, writ denied); Utilities Pipeline Co. v. American Petrofina Marketing, 760 S.W.2d 719, 723 (Tex. App.Dallas 1988, no writ).
[3] Schultz v. Rural/Metro Corp., 956 S.W.2d 757, 762 (Tex.App.Houston [1st Dist.] 1997, no writ); Peerenboom v. HSP Foods, Inc., 910 S.W.2d 156, 161 (Tex.App.Waco 1995, no writ); Kotzur v. Kelly, 791 S.W.2d 254, 256 (Tex. App.Corpus Christi 1990, no writ); Schultz v. General Motors Acceptance Corp., 704 S.W.2d 797, 800-01 (Tex.App.Dallas 1985, no writ); Habern v. Commonwealth Nat'l Bank, 479 S.W.2d 99, 100-101 (Tex.Civ.App.Dallas 1972, no writ).
[4] De Los Santos v. Southwest Texas Methodist Hosp., 802 S.W.2d 749 (Tex.App.San Antonio 1990, no writ), overruled on other grounds, Lewis v. Blake, 876 S.W.2d 314 (Tex.1994).
[5] Perkins v. Crittenden, 462 S.W.2d 565 (Tex. 1970) (distinguishing Youngstown Sheet & Tube Co. v. Penn, 363 S.W.2d 230 (Tex.1962)); Trimble v. Gulf Paint & Battery, Inc., 728 S.W.2d 887, 889 (Tex.App.ouston [1st Dist.] 1987, no writ) (acknowledged by this court in Clendennen v. Williams, 896 S.W.2d 257, 260 (Tex.App.Texarkana 1995, no writ).
[6] Although this type of error is labeled by case law as a substantive defect, it is more accurate to describe the type of error as one that causes the document to have no evidentiary value. Thus, since it was not evidence, it would have no evidentiary value and would not be considered in any way on appeal.
[7] Progressive County Mut. Ins. Co. v. Carway, 951 S.W.2d 108, 117 (Tex.App.ouston [14th Dist.] 1997, no writ); Pena v. Neal, Inc., 901 S.W.2d 663, 668 (Tex.App.San Antonio 1995, writ denied); Ramirez v. Transcontinental Ins. Co., 881 S.W.2d 818, 829 (Tex.App.ouston [14th Dist.] 1994, writ denied); Bell v. Moores, 832 S.W.2d 749 (Tex.App.Houston [14th Dist.] 1992, writ denied); Schultz, 704 S.W.2d at 801; Habern, 479 S.W.2d at 101.
[8] This appeal was perfected after September 1, 1997, after the effective date of the amendments to Tex.R. Civ. P. 166a. The case was tried, however, under the preceding version of the rule.
[9] Baubles & Beads v. Louis Vuitton, S.A., 766 S.W.2d 377 (Tex.App.Texarkana 1989, no writ); Houston v. Clear Creek Basin Auth., 589 S.W.2d 671 (Tex.1979).
[10] Nixon v. Mr. Property Management Co., 690 S.W.2d 546 (Tex.1985).
[11] Cain had to place into issue evidence to show that arsenic was deposited on his property in addition to the contamination already in existence, through some wrongful act of the defendant.
[12] See Kraft v. Langford, 565 S.W.2d 223, 228 (Tex.1978).
[13] Cain points to three record cites (five pages) in support of his position on this point. Only his own deposition has any real connection to this particular issue.