02-10-162-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT
 OF APPEALS
 SECOND
 DISTRICT OF TEXAS
 FORT
 WORTH
  
 
 


 

NO. 02-10-00162-CV

 

 


 
 
 TTHR, L.P. D/B/A PRESBYTERIAN HOSPITAL OF DENTON
 
 
  
 
 
 APPELLANT
 
 


                                                                                                                             

V.

 


 
 
 AMANDA COFFMAN
 
 
  
 
 
 APPELLEE
 
 


 

                                                                                                                             

------------

 

FROM THE
211TH DISTRICT COURT OF DENTON COUNTY

 

------------

 

OPINION

 

------------

TTHR, L.P. d/b/a Presbyterian Hospital of Denton
(Presbyterian) appeals the denial of its motion to dismiss filed pursuant to
Texas Civil Practice and Remedies Code section 74.351(b).  See Tex. Civ.
Prac. & Rem. Code Ann. § 74.351 (Vernon 2011).  Presbyterian asserts
that the suit filed against it by Appellee Amanda Coffman was a health care
liability claim, subject to the requirements of chapter 74 of the civil
practice and remedies code.  Because we agree with Presbyterian that Coffman’s
claim is a health care liability claim, we reverse the trial court’s order,
render judgment dismissing Coffman’s claims against Presbyterian, and remand
the case for a determination by the trial court of costs and attorney’s fees to
be awarded to Presbyterian.

Background

 

Coffman sought treatment at Presbyterian on November
5, 2007.  As part of her treatment, she submitted a urine sample for testing.  Presbyterian
staff released the laboratory report on the sample to the University of North Texas
Police Department, who then released it to the University of North Texas, where
Coffman was a student.  The laboratory report indicated a violation of the
school’s code of student conduct, and Coffman was suspended and removed from
student housing.

Coffman claims the release of her test results was
negligent and a violation of section 159.002 of the occupations code, which
designates medical records as confidential and privileged.  See Tex.
Occ. Code Ann. § 159.002 (Vernon 2004).  Coffman filed suit against
Presbyterian and the University of North Texas.  The University is not a party
to this appeal.

Approximately five months after Coffman filed her
petition, Presbyterian moved for dismissal of Coffman’s claims against it,
arguing that Coffman failed to timely serve an expert report as required by
chapter 74 of the civil practice and remedies code, also known as the Texas
Medical Liability Act (TMLA).  See Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351.  Coffman argued that a report is unnecessary because the TMLA
only applies to health care liability claims and her claims are not health care
liability claims.  The trial court denied Presbyterian’s motion to dismiss. 
Presbyterian filed this appeal.

Standard of Review

 

Although
appellate courts review a trial court’s decision to grant or deny a motion to
dismiss for failure to timely serve a section 74.351(a) expert report for an
abuse of discretion, see Jernigan v. Langley, 195 S.W.3d 91, 93 (Tex.
2006), the issue presented here requires a determination of whether the TMLA applies to Coffman’s claims.  We therefore
review the applicability of the TMLA de
novo.  See Marks v. St. Luke’s Episcopal Hosp., 319 S.W.3d 658,
663 (Tex. 2010); Fudge v. Wall, 308 S.W.3d 458, 460 (Tex. App.—Dallas
2010, no pet.).

Whether
a claim is a health care liability claim depends on the underlying nature of
the claim being made.  Garland Cmty. Hosp. v. Rose, 156 S.W.3d 541, 543
(Tex. 2004).  A party may not avoid the requirements of the TMLA through artful
pleading.  Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d
842, 854 (Tex. 2005); Garland Cmty. Hosp., 156 S.W.3d at 543.  Courts
must look to the act or omission that forms the basis of the complaint to
determine whether it is either an inseparable part of the rendition of health
care services or based on a breach of the standard of care applicable to health
care providers.  Garland Cmty. Hosp., 156 S.W.3d at 544.  If the factual
allegations are related to medical treatment provided by the defendant and
constitute an inseparable part of the defendant's rendition of medical
services, then the plaintiff’s claim is a health care liability claim subject
to the requirements of the TMLA.  Marks,
319 S.W.3d at 664.

Discussion

 

The sole issue before us is whether a claim for the
wrongful release of medical information is a health care liability claim under
the TMLA.  See Tex. Civ. Prac. & Rem. Code Ann. §§ 74.001–.507
(Vernon 2011).  If it is a health care liability claim, Coffman was required to
serve an expert report within 120 days of filing her original petition.  See
id. § 74.351.  The TMLA requires the dismissal of the claim if a report is
not served, and the statute does not grant the court the ability to offer an
extension for failing to serve a report within the statutory timeframe.  See
Maris v. Hendricks, 262 S.W.3d 379, 384 (Tex. App.—Fort Worth 2008, pet.
denied) (noting that statutory extension to cure a deficient report does not
apply when no report is served).  The parties agree that if it is not a health
care liability claim, Coffman was not required to serve such a report.

Coffman argues that no report is necessary because she
filed a common law claim of negligence and a claim under the occupations code. 
As we stated above, we are required to look at the underlying act or omission
forming the basis of the complaint.  See Garland Cmty. Hosp., 156
S.W.3d at 543–44.  If the claim falls under the definition of a health care
liability claim, it is subject to the TMLA, regardless of how it was pleaded.  Id.
at 544.




 

TMLA defines “health
care liability claim” as

 

a cause of action against a health care provider or
physician for treatment, lack of treatment, or other claimed departure from
accepted standards of medical care, or health care, or safety or professional
or administrative services directly related to health care, which proximately
results in injury to or death of a claimant, whether the claimant’s claim or
cause of action sounds in tort or contract.

 

Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13). 
“Health care” is defined to mean “any act or treatment performed or furnished,
or that should have been performed or furnished, by any health care provider
for, to, or on behalf of a patient during the patient’s medical care,
treatment, or confinement.”  Id. § 74.001(a)(10).  “Professional or
administrative services” is defined as “those duties or services that a
physician or health care provider is required to provide as a condition of
maintaining the physician’s or health care provider’s license, accreditation
status, or certification to participate in state or federal health care
programs.”  Id. § 74.001(a)(24).

A.  
Professional or Administrative
Services Directly Related to Health Care

 

Health
care providers are required under a number of statutes to maintain the
confidentiality of patient records.  See, e.g., Tex. Health & Safety
Code Ann. §§ 181.152 (Vernon 2010) (disallowing disclosure of protected health
information for marketing purposes without patient’s consent), 241.155 (Vernon
2010) (requiring a hospital to “adopt and implement reasonable safeguards for
the security of all health care information it maintains”); Tex. Occ. Code Ann.
§ 159.002(b) (requiring records of treatment to be “confidential and
privileged and may not be disclosed”); 42 C.F.R. § 482.13(d) (2004) (making
confidentiality of records a condition of participation in Medicare and
Medicaid); 42 C.F.R. § 482.24 (2004) (same).  Failure to do so can result
in the loss of the hospital’s license, accreditation, and ability to
participate in state or federal health care program.  See, e.g., Tex.
Health & Safety Code Ann. §§ 181.202 (allowing for the revocation of
provider’s license for a pattern or practice of violating section 181.152),
181.203 (allowing for the exclusion of a hospital from participating in state-funded
health care programs for a pattern or practice of violating section 181.152), 241.053
(allowing for the denial, suspension, or revocation of a hospital’s license for
violating section 241.155); 25 Tex. Admin. Code § 133.121 (2007) (Tex. Dep’t of
State Health Servs., Enforcement Action) (allowing for the denial, suspension,
or revocation of a hospital’s license for violating section 241.155); 42 C.F.R.
§§ 482.13(d) (conditioning participation in Medicare and Medicaid on the
protection of patient’s right to confidentiality); 482.24 (conditioning
participation in Medicare and Medicaid on maintaining patient’s medical
records).  Because confidentiality of records is required “as a condition of
maintaining the . . . health care provider’s license, accreditation status, or
certification to participate in state or federal health care programs,” the
duty to maintain the confidentiality of patient records is a professional or
administrative service as defined by the TMLA.  See
Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(24) (defining
professional or administrative services).

The duty of confidentiality is also directly related
to health care based on its definition in the TMLA.  See Tex. Civ. Prac. & Rem. Code. Ann. § 74.001(a)(10)
(defining “health care”).  A patient’s medical records are required to be
created during the patient’s care.  See 22 Tex. Admin. Code § 165.1(a)
(2010) (Tex. Med. Board, Medical Records).  They must memorialize each patient
encounter, including all assessments, impressions, and diagnoses.  Id. 
The duty to create records is directly related to the acts performed by the
health care provider or treatments received by the patient.  The duty to
maintain the confidentiality of those records is inseparable from the duty to
maintain the records themselves.  Therefore, the duty to create and maintain
the confidentiality of medical records is directly related to the patient’s
health care.  Cf. Fudge, 308 S.W.3d at 463–64 (holding that letter written by
counselor to social worker regarding counselor’s “professional assessment and
evaluation” of child was “clearly” related to and “inseparable from” treatment
of child).

Coffman
argues that the injury did not occur during her medical care, as
required by the TMLA.  See Tex. Civ. Prac.
& Rem. Code Ann. § 74.001(a)(1).  However, the statute does not
mandate that the injury itself occur during the patient’s medical care, just
that it be directly related to acts that occurred during the patient’s health
care.  Id. § 74.001(a)(10), (13) (defining “health care liability claim”
as a “claimed departure from accepted standards of . . . professional or
administrative services directly related to [‘any act or treatment performed or
furnished . . . for, to, or on behalf of a patient during the patient’s medical
care’]”).  Coffman’s urine analysis occurred during, and as a part of, her care
at Presbyterian.  The results of the analysis were recorded in her medical
records, as a professional or administrative service directly related to the
care she received.  The duty of confidentiality arises during the patient’s
medical care and must be maintained as long as the provider possesses the
medical records.  See, e.g., Tex. Occ. Code. Ann. § 159.002(d)
(stating that confidentiality “continues to apply . . . regardless of when the
patient receives the services of a physician”); 22
Tex. Admin. Code § 165.1(b) (2010) (Tex. Med. Board, Medical Records)
(requiring physicians to maintain medical records for seven years and
destruction of such records “shall be done in a manner that ensures continued
confidentiality”); 42 C.F.R. § 482.24 (requiring medical records to be
retained for five years as a condition for participating in Medicare and
Medicaid).  Providers owe the duty of
confidentiality to their patients as part of the care they provide.  See
statutes requiring health care providers to keep patient’s records confidential
cited supra Part A.  We therefore conclude that a violation of a
patient’s confidentiality is actionable as a health care liability claim
regardless of whether it occurred while the patient was in the treatment room
or after she had left the facility.

Coffman
also argues that it is “inconceivable” that the legislature intended to include
breaches of confidentiality under the TMLA when one considers the purpose of
the statute.  We agree with Coffman that the purpose of original statute was to
address medical malpractice claims.  See Marks, 319 S.W.3d at 663
(noting that article 4590i, the predecessor to the current chapter 74 of the
civil practice and remedies code, was enacted to “remedy a medical malpractice
insurance crisis”).  However, the statute has been expanded by the legislature
since its enactment, and we must give effect to those amendments.  See
Horizon/CMS Healthcare Corp. v. Auld, 34 S.W.3d 887, 892 (Tex. 2000) (“This
Court’s ultimate goal in construing a statute is to give effect to the Legislature’s
intent as expressed in the language of the statute.”); Spradlin v. Jim
Walter Homes, Inc., 34 S.W.3d 578, 580 (Tex. 2000) (noting that courts must
“give effect to all the words of a statute”).  The legislature added and
defined the phrase “professional or administrative services,” and we will not
now read it out of the statute.  There can be no “administrative service” more
directly related to the rendition of health care than the memorialization of
that care.  And the duty to maintain the confidentiality of those records
cannot be separated from the duty to maintain them.  We therefore hold that the wrongful release of medical information is a departure
from accepted standards of professional or administrative services directly
related to health care under the TMLA.

B.   Injury or Death 

Coffman argues that the TMLA does not apply because
“injury” as used in the statute can only be understood as meaning physical
injury.  Coffman relies on Thomas v. State, 923 S.W.2d 645 (Tex.
App.—Houston [1st Dist.] 1995, no pet.), and Pallares v. Magic
Valley Electric Co-op., Inc., 267 S.W.3d 67 (Tex. App.—Corpus Christi 2008,
pet. denied).

Thomas
involved a felony conviction for failure to stop and render aid.  923 S.W.2d at
647.  The statute required the “driver of a vehicle involved in an accident
resulting in injury to or death of any person” to return to the scene of the
accident.[1]  Act of 1947, 50th Leg., R.S.,
ch. 421, 1947 Tex. Gen. Laws 967, repealed by Act of April 21, 1995,
74th Leg., R.S., ch. 165, § 24(a), 1995 Tex. Gen. Laws 1870, 1871.  The court
determined that “injury” in the statute meant “personal injury.”  Thomas,
923 S.W.2d at 647–48.

The
statute in Thomas is unanalogous to the TMLA for many reasons.  First,
the section of the code in Thomas was entitled “Accidents involving
death or personal injuries.”  Id. at 647.  Second, the section was
replete with other references to “personal injury,” and it assumed that a
person was physically struck by a vehicle and required the driver to render aid
to the person, including taking the victim to a hospital or doctor.  Id. 
And third, it further required the State, in prosecuting the driver under the
statute, to prove that the injury was to “any part of the human body” and that
it “necessitate[d] treatment.”  Id.

None of the indications present in Thomas that led
the court to conclude that “injury” meant “personal injury” are present in the
TMLA.  The statute in Thomas required an underlying tort.  Id. 
The TMLA allows for recovery regardless of “whether the claimant’s claim or
cause of action sounds in tort or in contract.”  Tex. Civ. Prac. & Rem.
Code Ann. § 74.001(a)(13).  The statute in Thomas made repeated
references to “personal injury.”  923 S.W.2d at 647.  The only reference to
physical injury to which Coffman points is in the definition of claimant, where
it states, “All persons claiming to have sustained damages as the result of the
bodily injury or death of a single person are considered a single claimant.” 
Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(2).  However, the sentence
does not function to limit claimants to patients, see, e.g., Fudge,
308 S.W.3d at 464 (holding that father’s and grandmother’s claims for libel
were health care liability claims); Groomes v. USH of Timberlawn, Inc.,
170 S.W.3d 802, 804 (Tex. App.—Dallas 2005, no pet.) (holding that patient’s
mother’s claims for her own emotional distress were health care liability
claims), much less to limit claimants to patients with physical injuries.  We
therefore do not find Thomas instructive on the present issue.

In Pallares, the Corpus Christi Court of Appeals
held that a health care insurance provider was not a claimant under the TMLA
because “it did not undergo treatment by Pallares.”  267 S.W.3d at 73.  The
court went on to state, without support, “Moreover, [the insurance provider]
does not fit within the definition of a claimant as provided in the [TMLA]
because the record does not demonstrate that any person directly sustained
bodily injury or death proximately caused by the health care treatment provided
by Pallares.”  Id.  The court then returned to its analysis regarding
the insurance provider’s status as a non-patient.  The court mentions “bodily
injury” in response to the statute’s language regarding, as stated above, a
non-patient’s ability to seek redress when its injuries result from someone
else’s “bodily injury or death.”  See Tex. Civ. Prac. & Rem. Code
Ann. § 74.001(a)(2).  That is, the court was addressing the insurance
provider’s standing absent any subrogation rights.  See Pallares, 267
S.W.3d at 73 n.5 (commenting, in reference to the above-quoted sentence, on the
lack of evidence in the record regarding the insurance provider’s subrogation
rights with respect to the patient).  Further, the court did not distinguish
its facts from the case the insurance provider relied upon on the basis that
the other case involved nonphysical injuries.  Id. at 73–74
(distinguishing Inst. for Women’s Health, P.L.L.C. v. Imad, No.
04-05-00555-CV, 2006 WL 334013, at *2 (Tex. App.—San Antonio Feb. 15, 2006, no
pet.) (mem. op.) (noting that the claimants sought damages for mental anguish,
loss of companionship and society, and medical bills)).[2]

There have been many instances in which nonphysical
injuries have resulted in health care liability claims.  See, e.g., Murphy
v. Russell, 167 S.W.3d 835, 837 (Tex. 2005) (sedation contrary to
instructions); Walden v. Jeffery, 907 S.W.2d 446, 448 (Tex. 1995) (ill-fitting
dentures); Armstrong v. Robinsons, No. 14-08-01077-CV, 2010 WL 4817100,
at *2 (Tex. App.—Houston [14th Dist.] Nov. 23, 2010, no pet.) (mem. op.) (ill-fitting
dentures); Fudge, 308 S.W.3d at 460 (libel); Sloan v. Farmer, 217
S.W.3d 763, 768 (Tex. App.—Dallas 2007, pet. denied) (employment termination); Imad,
2006 WL 334013, at *2 (mental anguish); MacPete v. Bolomey,185 S.W.3d
580, 582, (Tex. App.—Dallas 2006, no pet.); CPS investigations, criminal
proceedings, and a child custody case); Groomes, 170 S.W.3d 802, 804
(false imprisonment); Smalling v. Gardner, 203 S.W.3d 354, 365 (Tex.
App.—Houston [14th Dist.] 2005, pet. denied) (kidnapping, false imprisonment,
child abduction, fraud, breach of contract, deceptive trade practices, and
conspiracy).  We are not persuaded that all of these cases were incorrectly
decided.  We therefore refuse to add the word “physical” to the injury
requirement of the TMLA.

C.   Rendering an Opinion 

Lastly, Coffman argues that an expert report here would
require the expert to render a legal opinion and, because the statute requires
a physician to render the expert opinion, it cannot be created.  See
Tex. Civ. Prac. & Rem. Code Ann. §§ 74.402, 74.403(a).

The TMLA requires a claimant, within 120 days of filing her
petition, to serve an expert report on each party.  Id. § 74.351(a).  The
expert report must provide the expert’s opinion regarding “applicable standards
of care, the manner in which the care rendered by the physician or health care
provider failed to meet the standards, and the causal relationship between the
failure and the injury, harm, or damages claimed.”  Id. § 74.351(r)(6).  An
expert may only provide an opinion on the standard of care if he

(1)  is practicing health care in a field of
practice that involves the same type of care or treatment as that delivered by
the defendant health care provider, if the defendant health care provider is an
individual, at the time the testimony is given or was practicing that type of
health care at the time the claim arose;

 

(2)  has knowledge of accepted standards of care
for health care providers for the diagnosis, care, or treatment of the illness,
injury, or condition involved in the claim; and

 

(3)  is qualified on the basis of training or
experience to offer an expert opinion regarding those accepted standards of
health care.

 

Id. § 74.402(b).  The
first requirement of subsection 74.402(b) notably applies only “if the
defendant health care provider is an individual.”  Id.  Coffman did not
sue any individual providers, but only the hospital.  Therefore, a qualified
expert in this case would be an individual who has knowledge of the accepted
standards of care for providers regarding the confidentiality of medical
records and the necessary training or experience to offer an expert opinion.  Id.
§ 74.402(b)(2)–(3).[3]

We first note that the expert report requirement of the
TMLA is a procedural requirement that all claimants must complete in order to
continue with their claims.  The supreme court has said that the expert report 

does not establish a requirement for recovery.  It may be
that once discovery is complete and the case is tried, there is no need for
expert testimony . . . .  But the Legislature envisioned that discovery . . .
should not go forward unless at least one expert has examined the case . . . . 
The fact that in the final analysis, expert testimony may not be necessary to
support a verdict does not mean the claim is not a health care liability claim.

 

Murphy, 167 S.W.3d at
838 (commenting on former revised civil statutes article 4590i, the predecessor
to chapter 74).  Coffman’s claims are based on a violation of a standard of
care applicable to health care providers.  These claims necessitate a threshold
examination by an expert on that standard of care and a determination by that
expert that Presbyterian fell below that standard and proximately caused
Coffman’s injuries.  The expert report required at the commencement of the
litigation provides the validation necessary to justify proceeding with the
lawsuit.

As to the issue of causation, Coffman points out that the
facts of this case would require a physician to opine on what civil damages
Coffman suffered because of the disclosure of her health care information.  See
Tex. Occ. Code Ann. § 159.009(b) (Vernon 2004) (“The aggrieved person may prove
a cause of action for civil damages.”).  Because it seems absurd to require a
physician to testify as to civil damages, Coffman argues that her claim cannot
therefore be a health care liability claim.

The legislature has prescribed that it is necessary for a
physician to opine as to causation of damages.  Tex. Civ. Prac. & Rem. Code
Ann. § 74.351(r)(5)(C).  For this court to agree with Coffman’s argument,
made without citation to authority, that the requirement is “absurd,” and therefore
should transform a clear health care liability claim into another category that
does not require an expert report, would violate legislative intent.  See
Marks, 319 S.W.3d at 673 (Johnson, J., concurring) (“If policy
considerations support limiting or excluding subcategories of claims when the
unambiguous statutory language includes the overall category . . . , then
incorporating those exclusions into the statute is a Legislative prerogative,
not a judicial one.”).  The inclusion of “professional or administrative
services” to the definition of a health care liability claim may have created
some arguably odd procedural demands for some claims.  Nevertheless, this
requirement does not make those claims something other than health care
liability claims.  In Marks, for instance, the plaintiff’s expert
physician opined on the proper maintenance and construction of a hospital bed. 
Id. at 671 (Johnson, J., concurring).  It is unusual for a physician to
render such an opinion, but in that case, it was required.  See id. at
664 (holding that plaintiff’s claim was a health care liability claim and
required an expert report).  As we noted above, recasting a claim as something
other than a health care liability claim does not excuse the plaintiff from
meeting the requirements of the TMLA.  See Diversicare, 185
S.W.3d at 854; Garland Cmty. Hosp., 156 S.W.3d at 543.  An expert report
on causation written by a physician is one of those requirements, and Coffman
failed to meet it.

Coffman further argues that an expert rendering an opinion
on the standard of care could only know “under what circumstances confidential
patient information can be disclosed” by reading and interpreting the statute
and legal commentary, which would amount to a legal opinion.  Coffman fails to
recognize in her argument that the duty of confidentiality is a requirement of
a health care provider’s license and accreditation and therefore all providers
are expected to know the rules and regulations regarding dissemination of
protected patient information.[4] 
See statutes conditioning licenses, accreditation, or participation in
state or federal health care programs on the continued practice of keeping medical
information confidential cited supra Part A.  This court has noted
before that “‘there are certain standards of medical care that apply to . . .
any medical doctor.’  If the subject matter is common and equally recognized
and developed in all fields of practice, any physician familiar with the
subject may testify as to the standard of care.”  Menefee v. Ohman, 323
S.W.3d 509, 514 (Tex. App.—Fort Worth 2010, no pet.) (citing Blan v. Ali,
75 S.W.3d 741, 746 (Tex. App.—Houston [14th Dist.] 1999, no pet.)).  The
required expert opinion in this case would be on a standard of care that is
specialized and applicable to health care providers.  When and to whom to
release medical information necessarily involves professional judgment.  Thus,
we do not agree with Coffman that to require an expert opinion on a standard of
care imposed on all health care providers would be a “tortured and absurd
construction” of the TMLA.  Because the standard of care regarding
confidentiality is a standard that applies to all health care providers and
because health care providers are expected to know the laws applicable to their
profession, any otherwise qualified expert could offer testimony on the
standard of care owed to Coffman.  Because the report is possible and
necessary, we sustain Presbyterian’s sole issue.

Conclusion

 

Having sustained Presbyterian’s sole issue, we reverse the
trial court’s order and render judgment dismissing Coffman’s claims against
Presbyterian.  The case is remanded to the trial court for further proceedings
consistent with this opinion as to Presbyterian’s claim for attorney’s fees and
costs.

 

 

                                                                             LEE
GABRIEL

                                                                             JUSTICE

 

PANEL:  GARDNER, MEIER, and GABRIEL, JJ.    

 

MEIER, J., filed a dissenting opinion.

 

DELIVERED:  March 17, 2011

 

 

 

 












 


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT
 OF APPEALS
 SECOND
 DISTRICT OF TEXAS
 FORT
 WORTH
  
 
 


 

NO. 02-10-00162-CV

 

 


 
 
 TTHR, L.P., d/b/a
 Presbyterian Hospital of Denton
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Amanda Coffman
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

 

FROM THE 211th District Court OF Denton COUNTY

----------

 

DISSENTING OPINION

----------

 

I dissent because I disagree with the majority’s
conclusion that Coffman’s claim is a health care liability claim.  The gravamen
of the claim and the injury- or damage-causing event is the release by
Presbyterian of the confidential results of Coffman’s urine test to the
University of North Texas Police Department, ultimately resulting in her
dismissal from the university.  I do not believe that the unauthorized release
of the confidential information meets the requirement articulated by Justice
Medina in Marks v. St. Luke’s Episcopal Hospital, stating

Whether the
underlying claim involves a health care provider’s negligent act or omission,
or the patient’s exposure to some other safety risk, the relationship between
the injury causing event and the patient’s care or treatment must be
substantial and direct for the cause of action to be a health care liability claim
under the MLIIA.

 

319 S.W.3d 658, 664 (Tex. 2010).  Because the majority
concludes otherwise, I respectfully dissent.

 

 

BILL MEIER
JUSTICE

 

DELIVERED: 
March 17, 2011









[1]The
current version of the statute appears in the transportation code.  See
Tex. Transp. Code Ann. § 550.021 (Vernon Supp. 2010).





[2]Coffman
also points to Benson v. Vernon, 303 S.W.3d 755, 759 (Tex. App.—Waco
2009, no pet.), to support her suggested interpretation of Pallares.  In
Benson, the Waco Court of Appeals held that the plaintiff’s allegation
of “alteration and fabrication of medical records” was “not a health care
liability claim required to be addressed in an expert report.”  Id.  The
court offered no analysis to support its distinction of that claim from the
other allegations made regarding the health care that the plaintiff received. 
Chief Justice Gray, in his concurrence and dissent, specifically disagreed with
the majority’s holding that alteration and fabrication of medical records are
not health care liability claims.  Id. at 767 (Gray, C.J., concurring
and dissenting) (“There must be a standard in the medical industry for the
extent and nature of what gets entered by the physician or health care provider
in the medical records of a patient.”).  Further, we are concerned that Benson
runs afoul of the supreme court’s holding in Yamada v. Friend, No.
08-0262, --- S.W.3.d ---, 2010 WL 5135334, at *4–5 (Tex. Dec. 17, 2010)
(holding that claims based on the same facts as health care liability claims
cannot be split because “then the TMLA and its procedures and limitations will
effectively be negated”).  We therefore do not find Benson persuasive on
this issue.





[3]Section
74.351(r)(5)(C) requires a physician to testify as to causation.  See
Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(5)(C).  However, the statute
allows for a plaintiff to meet the statute’s requirements through serving
separate reports by different experts on liability and causation.  See id.
§ 74.351(i) (“Nothing in this section shall be construed to mean that a single
expert must address . . . both liability and causation issues for a physician
or health care provider.”).





[4]Professional
medical associations like the American Medical Association require their
members to uphold ethical codes, which include the pledge to keep medical
records confidential.  See AMA Council of Ethical & Judicial
Affairs, Formal Op. 7.025 (1999) (“Physicians have a responsibility to be aware
of the appropriate guidelines in their health care institution, as well as the
applicable federal and state laws.”); see also AMA CEJA, Access to
Medical Records by Non-Treating Medical Staff 1–2 (1999), available at http://www.ama-assn.org/ama1/pub/upload/mm/369/ceja_6a99.pdf
(noting that the American Hospital Association guidelines state that “all
individuals who use or receive information from the medical record are
responsible, in part, for ensuring the confidentiality of that information”).