**Matt SLOAN, M.D. and Pain Net Physicians Group, P.A., Appellants**

v.

**Stephen FARMER and Susan Farmer, Appellees.**

No. 05–06–00247–CV.

Court of Appeals of Texas, Dallas.

March 22, 2007.

Jon H. Randall, Laurel Engelmann, Wendy H. Hermes, Berry & Randall, L.L.P., Dallas, Winston L. Borum, Borum & Hancock, L.L.P., Fort Worth, for appellants.

Barrett W. Stetson, Law Offices of Barett W. Stetson, Thomas P. Moynihan, Dallas, for appellees.

Before Justices FITZGERALD, RICHTER, and FRANCIS.

## OPINION

Opinion By Justice RICHTER.

In a single issue, appellants Matt Sloan, M.D. and Pain Net Physicians Group, P.A.

challenge the trial court's order denying their motion to dismiss on the ground that Stephen and Susan Farmer failed to comply with the expert report requirements of section 74.351(b) of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (Vernon 2005). Because we conclude that the Farmers' claims are "health care liability claims" subject to the requirements of section 74.351(b), we resolve appellants' issue in their favor. We reverse the judgment of the trial court, render judgment dismissing the Farmers' claims with prejudice, and remand the case solely for a determination of reasonable attorney's fees and costs of court incurred by Sloan and Pain Net.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

Stephen Farmer suffered from chronic back pain, cervical disease, cervical facet arthoplasty, myfascial pain, and throracic outlet syndrome. Dr. Sloan is a pain management physician who was treating Farmer for his chronic pain syndrome. Pain Net Physicians Group, P.A. (Pain Net, P.A.) is Sloan's professional association. Pain Net of Texas, Inc. (Pain Net, Inc.) is the corporation that is alleged to have managed Sloan's practice.

Sloan prescribed a number of controlled substances during the course of Farmer's treatment, and required Farmer to execute a narcotic administration contract in connection with this treatment. Under the terms of the contract, Farmer agreed to only take medications prescribed by Sloan, and to submit to random urine and blood screen testing to detect the use of other medications. Failure to abide by the terms of the contract was a ground for terminating the patient-physician relationship.

Farmer was employed by TXU. In April 2003, Sloan determined that Farmer should be placed on light-duty work, and opined that Farmer was a good candidate for long-term disability. TXU removed Farmer from full-duty work with a continuation of his salary. Subsequently, TXU hired Concentra Integrated Services, Inc. to monitor Farmer's treatment with respect to the salary continuation program and the application for long-term disability. Naomi Garrett was the caseworker assigned to Farmer's case.

In August 2003, a random urine drug screen was performed by Sloan on Farmer, and he tested positive for a controlled substance that was not among the current medications Sloan had prescribed. Sloan concluded that Farmer had violated the narcotic contract. He reported his conclusion in a letter to Farmer that informed Farmer that he had tested positive for a substance not prescribed by him and terminated the patient-physician relationship. Sloan gave the letter to an employee at Pain Net, Inc, presumably for the purpose of filing with Farmer's patient records. The employee then provided a copy of the letter to Garrett, who in turn communicated the information to TXU. Farmer had not consented to the disclosure of this information. TXU confronted Farmer with the information before he had received Sloan's letter, and then terminated Farmer's benefits and employment.

On August 2, 2004, Farmer and his wife initiated this lawsuit, naming Sloan, Pain Net, Inc. and Pain Net, P.A. as defendants. The original petition asserted that the unauthorized disclosure of privileged medical information to Farmer's employer constituted slander and a violation of the physician-patient confidentiality privilege. Plaintiffs' original petition was later amended to include allegations that the disclosure also violated the Health Insurance Portability & Accountability Act (HIPPA), the Texas Medical Records Privacy Act (TMRPA), the Texas Rules of

Evidence, and section 159.009 of the Texas Occupations Code. The amended petition acknowledges, however, that neither HIPPA nor the TMRPA provide a private remedy. In June 2005, plaintiffs' petition was amended for the second time to add Texas Pain Net, Inc. and Concentra as defendants and to assert an alleged violation of an additional federal statute.[1]

Sloan and Pain Net, P.A. maintained that the Farmers' claims were health care liability claims and moved for dismissal with prejudice and an award of attorney's fees pursuant to section 74.351 of the civil practice and remedies code. The motions were based on the Farmers' failure to serve an expert report and curriculum vitae within the statutorily proscribed time. The Farmers responded that the claims were not medical negligence claims, and therefore no expert reports were required. The trial court granted the motions in part and denied them in part, dismissing all of the Farmers' claims "except for plaintiffs' claims and causes of action asserted for violation of the Texas Occupational Code § 159.09." This interlocutory appeal ensued.

## II. MOTION TO DISMISS FOR FAILURE TO FILE EXPERT REPORT.

In a single issue, Sloan and Pain Net argue that the trial court erred in its partial denial of their motions to dismiss because the Farmers' claim for the unauthorized communication of confidential health care information is a health care liability claim subject to dismissal for non-compliance with the expert report requirement of the Texas Medical Liability and Insurance Improvement Act (the MLIIA)[2]. Based on our review of the record and the applicable law, we agree.

## A. Standard of Review.

When the resolution of an issue on appeal requires the interpretation of a statute, the court applies a *de novo* standard of review. *Groomes v. USH of Timberlawn Inc.*, 170 S.W.3d 802, 804 (Tex. App.-Dallas 2005, no pet.). Thus, in determining whether the Farmers' claim is a "health care liability claim" for the purpose of applying chapter 74 of the civil practice and remedies code, we will apply a *de novo* standard of review. *See Ponce v. El Paso Healthcare Sys., Ltd.*, 55 S.W.3d 34, 36 (Tex.App.-El Paso 2001, pet.denied); *Gomez v. Matey*, 55 S.W.3d 732, 735 & n. 2 (Tex.App.–Corpus Christi 2001, no pet.).

## B. Applicable Law.

*Expert Reports under the MLIIA.*

Section 74.351(a) of the civil practice and remedies code requires that a claimant bringing a health care liability claim must, not later than the 120th day after filing suit, serve on each party or the

---

1. After the trial court entered the order that is the subject of this appeal, Farmer filed a third amended petition, abandoning all previously asserted statutory violations other than the alleged violations of the occupations code, dropping Mrs. Farmer as a plaintiff, and adding a claim for an alleged violation of the health and safety code. Although Farmer refers to the alleged violation of the health and safety code in his argument to this court, the second amended pleading was the operative pleading at the time the trial court entered the order appealed from. Consequently, our review is limited to the alleged violations of the occupations code.

2. See Act of May 30, 1977, 65th Leg., R.S., ch. 817, §§ 1.01–41.05, 1977 Tex. Gen. Laws 2039–64 (subsequent amendments omitted) (former TEX. REV.CIV. STAT. ANN. art 4590i (Vernon Supp.2003)), *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 864, 884 (current version at TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.001–74.507 (Vernon Supp.2006)) (hereinafter MLIIA).

party's attorney one or more expert reports for each physician or health care provider against whom a liability claim is being asserted. *See* TEX.CIV.PRAC. & REM. CODE ANN. § 74.351(a) (Vernon Supp.2006). If a report has not been served by the 120–day deadline, the statute requires that upon motion by the affected physician or health care provider, the trial court "shall" dismiss the action with prejudice and award reasonable attorney's fees and costs. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b) (Vernon Supp.2006). The expert report requirements apply to a patient's claims regardless of whether they are tort claims, as long as the claims fall within the statutory definition of "health care liability claims." *Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842, 848 (Tex.2005). A health care liability claim is defined as:

> [A] cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(13) (Vernon 2005). When the essence of the suit is a health care liability claim, a party can not avoid the requirements of the statute through the artful pleading of his claim. *Diversicare,* 185 S.W.3d at 848; *Garland Community Hosp. v. Rose,* 156 S.W.3d 541, 543 (Tex. 2004); *MacGregor Med. Ass'n v. Campbell,* 985 S.W.2d 38, 40 (Tex.1998). The Texas Supreme Court has instructed that the determination of whether a claim falls within the definition of a health care liability claim requires an examination of the underlying nature of the claim. *Sorokolit v. Rhodes,* 889 S.W.2d 239, 242 (Tex.1994);

*Groomes,* 170 S.W.3d at 806. If the act or omission that forms the basis of the complaint is an inseparable part of the rendition of health care services, or if it is based on a breach of the standard of care applicable to health care providers, then the claim is a health care liability claim. *Garland Community Hosp.,* 156 S.W.3d at 544 (citing, *Walden v. Jeffery,* 907 S.W.2d 446, 448 (Tex.1995)). In our application of this core analysis, we are mindful of the Texas Supreme Court's concern that the application of a "rigid temporal distinction would create a large loophole, rendering the MLIIA inapplicable to a substantial number of claims against health care providers." *Id.* at 546. Within these parameters, we examine whether the underlying nature of the claim in this case is so inextricably interwoven with the rendition of health care services as to constitute a health care liability claim. *See Garland Community Hosp.* 156 S.W.3d at 546.

## C. The Farmers' Claim.

The Farmers' claim is based on Sloan's alleged breach of confidentiality. In this regard, the Farmers rely on the section of the occupations code that provides "[a] communication between a physician and a patient, relative to or in connection with any professional services as a physician to the patient, is confidential and privileged and may not be disclosed except as provided in this chapter." TEX. OCC.CODE ANN. § 159.002(a) (Vernon 2004). The statute further provides that a person aggrieved by the unauthorized release of confidential information may bring a cause of action for civil damages. *See* TEX. OCC.CODE ANN. § 159.009(b) (Vernon 2004).

Although the Farmers argue that their claim is not a health care liability claim, they concede in oral argument that Sloan did not intentionally communicate the confidential information to Farmer's employ-

er, and that their claims sound in negligence. The essence of the claim is that Sloan breached his duty of confidentiality and the breach caused the Farmers to suffer damages. The question then becomes whether a physician's duty of confidentiality is an inseparable part of the rendition of health care services or based on a standard of care applicable to health care providers. Within the confines of the requisite analysis, we are constrained to conclude that the duty of confidentiality is inseparable from the health care services to be provided, and the claimed breach necessarily implicates the standard of care.

Maintaining the confidentiality of patient records is part of the core function of providing health care services. The patient's records reflect and memorialize the services that were rendered. The privilege between a physician and his patient is an expression of the standard in the health-care profession which recognizes the confidential nature of the scope of the relationship and the communications that occur within the context of that relationship. The letter from Sloan to Farmer concerned the terms of the relationship as defined in the narcotic administration contract. The urinalysis was part of Farmer's treatment. The Farmers' claim is based on an alleged departure from the standard of confidentiality applicable to this letter concerning the relationship and treatment.

Sloan and Pain Net argue that Sloan's decision to terminate the relationship also implicates the standard of care. We agree, but note that the reasons for termination exceed the scope of the underlying claim. The crux of the claim is not the termination of the relationship, but rather the allegedly careless manner in which the reasons for the decision were wrongfully communicated to a third party.

 The statute that forms the basis of the Farmers' claim further illustrates the underlying nature of the claim. The

types of communications that are privileged under the statute are those "relative to or in connection with any professional services as a physician to a patient." *See* TEX. OCC.CODE ANN. § 159.002(a) (Vernon 2004). The duty of confidentiality that arises under the statute results from the physician-patient relationship; the duty does not exist independent of the relationship. A party is aggrieved for purposes of recovering damages only if a physician-patient relationship exists. *Warnke v. Boone,* 4 S.W.3d 266, 268 (Tex.App.–Houston [14th Dist.] 1998, no pet.). We therefore conclude that any duty Sloan may have had to maintain the confidentiality of the health-care communication is inextricably intertwined with the physician-patient relationship and the health-care services to which the communication pertains.

 The Farmers argue further that no medical expert *testimony* is required to set forth "the standard of patient-physician confidentiality" because the standard is set out in the statute. The expert report requirement, however, is a threshold requirement for the continuation of a lawsuit, not a requirement for recovery. *Murphy v. Russell,* 167 S.W.3d 835, 838 (Tex.2005). The fact that expert testimony may not be necessary to support a verdict does not mean the claim is not a health care liability claim. *Id.* In this case, the fact that expert *testimony* may or may not be required does not alter our conclusion about the claim.

Sloan and Pain Net also argue that the Farmers' claim is a health care liability claim because it involves an "administrative service." The Farmers respond that the claim can not be considered an administrative service because it does not involve physical injury or death. Because we have determined that the claimed breach of confidentiality involves a departure from accepted standards of medical or health care and is inseparable from the rendition of

health care services, we need not decide whether the claim further comports with the definition of a health care liability claim.

### III. CONCLUSION

We conclude that the Farmers' claim meets the statutory definition of a "health care liability claim" and is therefore subject to the expert report requirements of section 74.351(b). Because the Farmers failed to file an expert report, we reverse the portion of the trial court's order denying the motions to dismiss, render judgment in Sloan and Pain Net's favor dismissing the Farmers' claims with prejudice, and order that Sloan and Pain Net recover from the Farmers the costs of this appeal.

Sloan and Pain Net have also requested attorney's fees and costs incurred in the trial court, which are mandatory under the statute when a claimant fails to file an expert report in a health care liability claim. See TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b)(1). Accordingly, we remand this suit solely for a determination of costs and attorney's fees incurred by Sloan and Pain Net in the trial court.