In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-08-00183-CV


____________________



MEDICAL HOSPITAL OF BUNA TEXAS, INC. d/b/a


 BUNA MEDICAL CENTER REHABILITATION NURSING, Appellant



V.



IONA L. WHEATLEY, individually and as representative of 


THE ESTATE OF DOROTHY L. HELM, Appellee






On Appeal from the 1-A District Court 


Jasper County, Texas


Trial Cause No. 28599 






OPINION


 Medical Hospital of Buna, Texas, Inc., d/b/a Buna Medical Center Rehabilitation
Nursing ("Buna Medical Center") brings this interlocutory appeal from the trial court's
denial of its motion to dismiss for plaintiff Iona Wheatley's failure to file required expert
reports pursuant to the Medical Liability Act ("MLA"). See Tex. Civ. Prac. & Rem. Code
Ann. §§ 74.001-.507 (Vernon 2005 and Supp. 2008). Because we find that the claims
asserted by plaintiff constitute health care liability claims subject to the MLA, we reverse 
the decision of the court below.

BACKGROUND


 On October 17, 2007, Wheatley brought the underlying suit against Buna Medical
Center and NCM of Texas, Inc., d/b/a Edgewood Manor Nursing Home where Helm was a
resident at the time of her death, alleging that Helm was deprived of basic human necessities
during Hurricane Rita, which ultimately led to her death. Helm is alleged to have died on
October 10, 2005, at Edgewood in Texarkana, Texas, where she was transferred following
Hurricane Rita. On February 1, 2008, Wheatley filed her First Amended Petition, which set
forth allegations and claims virtually identical to those set forth in her Original Petition. (1) 

 Wheatley alleged that she sought the services of Buna Medical Center nursing home
in connection with the convalescence of her elderly mother, Helm. On or about September
24, 2005, Hurricane Rita hit the coastal area of Texas, necessitating a mandatory evacuation
of many southeasterly Texas homes and businesses, including, but not limited to, Buna
Medical Center, the nursing home facility in which Helm was a resident. Wheatley claimed
that "[a]s a result of the evacuation, [Helm] was transferred to the nursing home owned
and/or operated by Defendant, [Edgewood] Manor, where she died on October 10, 2005, as
a result of the negligent care she received at the hands of one or both Defendants." In her
First Amended Petition Wheatley made the following allegations in support of her claims
against the nursing home entities:

 Plaintiff would show that the injuries and death of [Helm] were a direct result
of the Defendants' breach of the duty of care owed to Plaintiff and Decedent. 
Plaintiff would show that one or both Defendants have failed, generally and
specifically as to [Helm], to adequately staff or supervise the personnel at the
nursing home, failed to properly attend to the needs of the residents of the
nursing home, failed to properly monitor the activities and status of the
residents of the nursing home, to prevent injury or death and that all of these
activities constitute negligence and directly resulted in the death of [Helm].


 Wheatley also alleged that Defendants "failed to provide [Helm] with adequate
supervision in order to provide her with safety and to prevent a catastrophic life-threatening
event from occurring . . . ." Wheatley asserted that the Defendants had or would receive
notice of her claim pursuant to section 74.051 of the MLA and that she had complied with
all the requirements of section 74.051 in filing her claim. Id. § 74.051. Finally, Wheatley
alleged that limitations on non-economic damages in medical negligence cases under the
MLA violated the Texas and United States Constitutions. See id. § 74.310.

 On March 12, 2008, Buna Medical Center filed a motion to dismiss Wheatley's suit
under section 74.351 of the Texas Civil Practice and Remedies Code as a result of
Wheatley's failure to file an expert report by the 120th day after the date her Original Petition
was filed in compliance with the MLA. Wheatley did not file a written response to the
motion. On April 4, 2008, the trial court heard defendant's motion to dismiss. On the day
of hearing, Wheatley filed a Second Amended Petition. 

 In Wheatley's Second Amended Petition she asserted claims for intentional, reckless
and negligent bodily injury, and for failing to provide Helm with adequate supervision. 
Wheatley deleted all references to Chapter 74 of the MLA from her allegations. In her
Second Amended Petition Wheatley alleged the following in support of her claims:

 Prior to Hurricane Rita coming ashore, BUNA MEDICAL abandoned many
of the facility's residents, including the elderly Decedent, at the facility. No
notice of the intended abandonment was given to Plaintiff. No provision was
made to prevent the obvious resulting harm. Decedent was deprived of food
and water, ultimately resulting in her death. At some point, Decedent was
transported to EDGEWOOD MANOR, where she died on October 10, 2005
from dehydration and malnutrition. 


Wheatley again alleged, "one or both Defendants failed to provide [Helm] with adequate
supervision in order to prevent a catastrophic life-threatening event from occurring and failed
to prevent [Helm] from suffering conditions which led or contributed to her untimely and
wrongful death." 

 At the hearing on the motion to dismiss it was undisputed that the 120-day deadline
for filing expert reports required under the MLA had passed. The trial court heard arguments
from both parties as to whether Wheatley's claims were health care liability claims giving
rise to the duty to file an expert report under the time limitations set forth in the statute. 
Without making any findings, the trial court denied the motion to dismiss. No party
requested findings of fact or conclusions of law from the trial court.

STANDARD OF REVIEW


 "We generally review a trial court's ruling on a motion to dismiss under section
74.351(b) for abuse of discretion." Schmidt v. Dubose, 259 S.W.3d 213, 215 (Tex. App.--Beaumont 2008, no pet.). Where, as here, the issues involve statutory construction and the
applicability of Chapter 74 to plaintiff's claims, a de novo standard of review is applied. See
Buck v. Blum, 130 S.W.3d 285, 290 (Tex. App.--Houston [14th Dist.] 2004, no pet.). 

THE MEDICAL LIABILITY ACT


 Section 74.351of the Texas Civil Practice & Remedies Code provides as follows:

 (a) In a health care liability claim, a claimant shall, not later than the
120th day after the date the original petition was filed, serve on each party or
the party's attorney one or more expert reports, with a curriculum vitae of each
expert listed in the report for each physician or health care provider against
whom a liability claim is asserted. The date for serving the report may be
extended by written agreement of the affected parties. Each defendant
physician or health care provider whose conduct is implicated in a report must
file and serve any objection to the sufficiency of the report not later than the
21st day after the date it was served, failing which all objections are waived. 


 (b) If, as to a defendant physician or health care provider, an expert
report has not been served within the period specified by Subsection (a), the
court, on the motion of the affected physician or health care provider, shall,
subject to Subsection (c), enter an order that:


 (1) awards to the affected physician or health care provider reasonable
attorney's fees and costs of court incurred by the physician or health care
provider; and


 (2) dismisses the claim with respect to the physician or health care
provider, with prejudice to the refiling of the claim.


Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a)-(b). A health care liability claim is defined
as: 

 [A] cause of action against a health care provider or physician for treatment,
lack of treatment, or other claimed departure from accepted standards of
medical care, or health care, or safety or professional or administrative services
directly related to health care, which proximately results in injury to or death
of a claimant, whether the claimant's claim or cause of action sounds in tort
or contract.


Id. § 74.001(13).

 On appeal, Buna Medical Center argues that Wheatley's claims are health care
liability claims, subject to the requirements of the MLA, and that the trial court erred in
refusing to dismiss the case under section 74.351(a). Wheatley concedes that her Original
and First Amended Petition alleged health care liability claims, but argues that the MLA does
not apply because 1) her Original Petition and First Amended Petition only pleaded health
care liability claims in the alternative; and 2) her Second Amended Petition deleted her health
care liability claims and pursued only non-healthcare liability claims. 

PLAINTIFF'S SECOND AMENDED PETITION


 A plaintiff cannot use artful pleading to avoid the Act's requirements when the
essence of the suit is a health care liability claim. Diversicare Gen. Partners, Inc. v. Rubio,
185 S.W.3d 842, 851 (Tex. 2005); see also Empowerment Options, Inc. v. Easley, No. 09-06-148 CV, 2006 WL 3239527, at *2 (Tex. App.--Beaumont Nov. 9, 2006, pet denied) (not
designated for publication). Stated differently, "[a] plaintiff cannot avoid the requirements
of chapter 74 by attempting to recast a health care liability claim as a different cause of action
. . . ." Wilson N. Jones Mem'l Hosp. v. Ammons, 266 S.W.3d 51, 57 (Tex. App.--Dallas
2008, pet. filed). This is true even where a plaintiff attempts to completely abandon its health
care liability claims in favor of alternative claims. See NCED Mental Health, Inc. v. Kidd,
214 S.W.3d 28, 36-37 (Tex. App.--El Paso 2006, no pet.) (Where plaintiff non-suited her
medical malpractice claims following a motion to dismiss by the defendant and amended her
petition to assert only negligent hiring claims, court held negligent hiring claims were in
essence health care liability claims and reversed). 

 We are not bound by Wheatley's characterization of her pleadings. See Empowerment
Options, Inc., 2006 WL 3239527, at *2 (citing Theroux v. Vick, 163 S.W.3d 111, 114 (Tex.
App.--San Antonio 2005, pet. denied)); see also Diversicare Gen. Partners, Inc., 185 S.W.3d
at 851; Garland Cmty. Hosp. v. Rose, 156 S.W.3d 541, 543 (Tex. 2004). The Texas Supreme
Court in Diversicare explained,

 It is well settled that a health care liability claim cannot be recast as another
cause of action to avoid the requirements of the MLIIA. We "are not bound
by niceties of pleadings, and a mere 'recasting' of a health care liability claim
based on physician or health care provider negligence in the garb of some
other cause of action is not sufficient to preclude the application of [chapter
74]." 


Diversicare Gen. Partners, Inc., 185 S.W.3d at 851 (citations omitted). Applying these rules
we have also held that an amended pleading does not trigger a new 120-day deadline to file
the required expert report under Chapter 74. See Empowerment Options, Inc., 2006 WL
3239527, at *4. See also Maxwell v. Seifert, 237 S.W.3d 423, 426 (Tex. App.--Houston
[14th Dist.] 2007, pet. denied)(amended malpractice petition asserting new claim did not
restart 120-day period for filing medical expert report).

 Wheatley argues that her Second Amended Petition deleted her health care liability
claims and that "[t]he duty complained about by Ms. Wheatley [in her Second Amended
Petition] is the failure to notify her that her mother was being abandoned without food, water,
or basic human necessities." We are not persuaded that Wheatley's Second Amended
Petition asserts a new claim. See Care Center Ltd. v. Sutton, No. 09-07-469 CV, 2008 WL
1745862, at *5 (Tex. App.--Beaumont Apr. 17, 2008, pet. filed)(not designated for
publication)(Where plaintiff's second amended petition asserted additional claims arising
"out of the same transaction or set of events" this court held that section 74.351 required
plaintiff to serve the defendant with an expert report within 120 days of filing of her original
petition). Wheatley complains of the same acts and omissions with respect to the care of
Helm in both her Original, First, and Second Amended Petitions. The duty of a nursing
home to provide its residents with "basic human necessities"and to "properly attend to the
needs of the residents of the nursing home" are one in the same. Therefore, to the extent we
determine that a breach of these duties constitutes a health care liability claim, the deadline
to file the required expert reports will run from the date of the filing of Wheatley's Original
Petition. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a).

HEALTH CARE LIABILITY CLAIMS 


 A cause of action against a health care provider is a health care liability claim under
the MLA if it is based upon a "claimed departure from accepted standards of medical care,
or health care," or a "claimed departure from accepted standards" of "safety or professional
or administrative services directly related to health care[.]" Id. § 74.001(13). To determine
whether a claim constitutes a health care liability claim under the statute, courts look to the
underlying nature of the allegations. See Garland Cmty. Hosp., 156 S.W.3d at 543. We
consider the alleged wrongful conduct and the duties allegedly breached, rather than the
injuries suffered. Diversicare Gen. Partners, Inc., 185 S.W.3d at 851. Where an act or
omission that forms the basis of the complaint is an inseparable part of the rendition of health
care services, then the claim is a health care liability claim, irrespective of how it was
pleaded. See Garland Cmty. Hosp., 156 S.W.3d at 543; see also Omaha Healthcare Center,
L.L.C. v. Johnson, 246 S.W.3d 278, 284 (Tex. App.--Texarkana 2008, pet. filed). We
conclude that the failure to properly supervise Helm or to provide her with basic human
necessities, such as food and water, are acts or omissions that are inseparable from the
rendition of health care services.

 "Health care" is defined broadly by the MLA as "any act or treatment performed or
furnished, or that should have been performed or furnished, by any health care provider for,
to, or on behalf of a patient during the patient's medical care, treatment, or confinement." 
See Tex. Civ. Prac. & Rem. Code Ann.§ 74.001(10) (emphasis added). Providing for the
fundamental needs of nursing home residents falls within the ambit of "health care" as
defined by the statute. See id; see also Diversicare Gen. Partners, Inc., 185 S.W.3d at 849-850. 

 In Diversicare the Texas Supreme Court discussed health care services and what it
considered to be inseparable from the rendition of health care services. The Court stated, 

 A nursing home provides services to its patients, often around the clock,
which include supervising daily activities; providing routine examinations and
visits with physicians; providing dietary, pharmaceutical, and routine dental
services; monitoring the physical and mental conditions of its residents;
administering medications; and meeting the fundamental care needs of the
residents. These fundamental needs include, where necessary, feeding,
dressing, assisting the resident with walking, and providing sanitary living
conditions. These services are provided by professional staff including
physicians, nurses, nurse aides, and orderlies who care for the residents.


 The level and types of health care services provided vary with the needs
and capabilities, both physical and mental, of the patients. . . . The nature and
intensity of care and treatment, including professional supervision, monitoring,
assessment, quantities and types of medication, and other medical treatment
are judgments made by professionals trained and experienced in treating and
caring for patients and the patient population in their health care facilities.


Diversicare Gen. Partners, Inc., 185 S.W.3d at 849-50 (citations omitted). The Court
concluded that "Diversicare's training and staffing policies and supervision and protection
of . . . residents are integral components of Diversicare's rendition of health care services .
. . ." Id. at 850. The Court also explained the difference between the duty owed by a health
care provider to its patients and the duty owed by premises owners to invitees:

 The obligation of a health care facility to its patients is not the same as
the general duty a premises owner owes to invitees. Health care staff make
judgments about the care, treatment, and protection of individual patients and
the patient populations in their facilities based on the mental and physical care
the patients require. The health care standard applies the ordinary care of
trained and experienced medical professionals to the treatment of patients
entrusted to them.


Id.; see also Empowerment Options Inc., 2006 WL 3239527, at *3. 

 Wheatley claims that the nursing home facility failed to provide adequate food and
water to Helm, and failed to adequately supervise Helm, resulting in death due to dehydration
and malnutrition. These are claims for breaches of the standard of care for a health care
provider because supervision and providing for the fundamental care needs of Helm are
inseparable from health care services provided to Helm as a resident of the nursing home. 
See Diversicare Gen. Partners, Inc.,185 S.W.3d at 849-850, 853; see also Tex. Civ. Prac.
& Rem. Code Ann. § 74.001(10), (13). Therefore, Wheatley's claims that Buna Medical
Center failed to supervise and properly attend to the fundamental needs of Helm during
Hurricane Rita are health care liability claims subject to the provisions of section 74.351. (2) 


APPLICATION OF THE MLA


 Section 74.351 provides that when the required expert reports are not served by the
claimant by the 120th day after the date the original petition was filed, the court, on the
motion of the affected health care provider shall dismiss the claim with prejudice to refiling,
and award the affected health care provider reasonable attorney's fees and costs incurred by
the health care provider. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b)(1)-(2). The
expert report requirement is not a requirement for recovery, it "is a threshold requirement for
the continuation of a lawsuit[.]" Sloan v. Farmer, 217 S.W.3d 763, 768 (Tex. App.--Dallas
2007, pet. denied). When a claimant fails to file the required report and the defendant makes
a motion pursuant to section 74.351(b), "the statute requires that the trial court shall award
costs and fees to that defendant and dismiss the claim with respect to that defendant." 
Omaha Healthcare Center, L.L.C., 246 S.W.3d at 280. Dismissal under section 74.351(b)
is not discretionary, it is mandatory. Id. 

 Wheatley filed her Original Petition on October 17, 2007. Her 120-day deadline to
file an expert report and curriculum vitae was, therefore, February 14, 2008. See Tex. Civ.
Prac. & Rem. Code Ann. § 74.351(a). Wheatley failed to file the required expert reports. 
Wheatley's attempt to avoid the application of the MLA by re-pleading her health care
liability claims after failing to comply with chapter 74 fails under Texas law. See NCED
Mental Health, Inc, 214 S.W.3d at 33-34. Because Wheatley failed to file the required expert
reports within the time period set forth in section 74.351(a), we sustain Buna Medical
Center's appellate issue complaining of the denial of its motion to dismiss.

AWARD OF ATTORNEY'S FEES


 Like dismissal under section 74.351, an award of costs and attorney's fees under
section 74.351 is not discretionary. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b)(1);
see also Omaha Healthcare Center L.L.C.., 246 S.W.3d at 280. As a counterpoint on appeal
Wheatley argues that defendant failed to show proof of reasonable attorney's fees sufficient
to support an award of fees under section 74.351(b)(1). We overrule Wheatley's
counterpoint. 

 Buna Medical Center submitted an affidavit in support of its attorney's fees with its
motion to dismiss. We note that while Texas courts have set forth factors that may be
considered in determining the reasonableness of attorney's fees, courts are not required to
receive evidence on each of those factors. See Brazos Elec. Power Co-op., Inc. v. Weber,
238 S.W.3d 582, 586 (Tex. App.--Dallas 2007, no pet.); Burnside Air Conditioning and
Heating, Inc. v. T.S. Young Corp., 113 S.W.3d 889, 897-98 (Tex. App.--Dallas 2003, no
pet.); Hagedorn v. Tisdale, 73 S.W.3d 341, 353 (Tex. App.--Amarillo 2002, no pet). The
court can look at "the entire record, the evidence presented on reasonableness, the amount
in controversy, the common knowledge of the participants as lawyers and judges, and the
relative success of the parties." Hagedorn, 73 S.W.3d at 353. Moreover, "[w]hat constitutes
reasonable attorney's fees is a question of fact, but clear, direct, uncontroverted evidence of
attorney's fees is taken as true as a matter of law, especially when the opposing party has not
rebutted the evidence." Collins v. Guinn, 102 S.W.3d 825, 836 (Tex. App.--Texarkana 2003,
pet. denied) (quoting Merchandise Ctr., Inc. v. WNS, Inc., 85 S.W.3d 389, 397 (Tex. App.--Texarkana 2002, no pet.)). 

 The affidavit provided by Buna Medical Center's attorney was made on personal
knowledge, and demonstrated the affiant's competence as an attorney who found the fees to
be reasonable based upon his education, his experience defending health care providers in
similar cases, and his training. Wheatley presented no evidence to controvert the affidavit
supporting Buna Medical Center's request for attorney's fees. 

 To allow the trial court to comply with the legislature's mandate, we reverse the trial
court's order denying Buna Medical Center's motion to dismiss and remand the cause to the
trial court for entry of a judgment dismissing Wheatley's claims against Buna Medical Center
with prejudice for failure to furnish an expert report as required by section 74.351 of the
Texas Civil Practice and Remedies Code and to award Buna Medical Center its reasonable
attorney's fees and court costs.

 REVERSED AND REMANDED. 

 __________________________________

 CHARLES KREGER

 Justice

Submitted on September 4, 2008

Opinion Delivered April 23, 2009

Before Gaultney, Kreger, and Horton, JJ.

 DISSENTING OPINION


 Plaintiff alleges the defendant abandoned Dorothy Helm at the defendant's facility
"[p]rior to Hurricane Rita coming ashore[,]" thereby depriving her of food and water; as a
result, plaintiff alleges, Helm died of dehydration and malnutrition. The second amended
petition asserts: (3) 

 On or about September 24, 2005, Hurricane Rita hit the Gulf Coast area,
including the town of Buna, Texas, where BUNA MEDICAL is located. Prior
to Hurricane Rita coming ashore, BUNA MEDICAL abandoned many of the
facility's residents, including the elderly Decedent, at the facility. No notice
of the intended abandonment was given to Plaintiff. No provision was made
to prevent the obvious resulting harm. Decedent was deprived of food and
water, ultimately resulting in her death. At some point, Decedent was
transported to EDGEWOOD MANOR, where she died on October 10, 2005
from dehydration and malnutrition. Plaintiff attempted to locate her mother
(Decedent) both before and after Hurricane Rita hit, to no avail. Plaintiff did
not learn of the abandonment, nor was she informed of her mother's
whereabouts, until after her mother's death, at which time she was finally
contacted by an employee of EDGEWOOD MANOR.


In denying the motion to dismiss, the trial court must have presumed the pleading was filed
in good faith. See generally Tex. R. Civ. P. 13 ("Courts shall presume that pleadings,
motions, and other papers are filed in good faith."). Artful pleading is not permitted, but this
is a pleading of fact, and the rules provide other remedies if there is no truth to the factual
allegation. The claim may be disposed of by summary judgment; sanctions are available if
the claim is shown to be frivolous. See Tex. R. Civ. P. 13, 166a. 

 Whether there is evidence to support plaintiff's allegation is not the issue in this
appeal, and one that an appellate court cannot determine on this record. As a practical
matter, an appellate court has no way on this limited record to independently determine
whether the pleading is true. Plaintiff's pleading alleges her mother was abandoned without
food and water, and that the deprivation of water and food caused her mother's death. 
Plaintiff alleges that "[n]o provision was made to prevent the obvious resulting harm[,]" and
"[n]o notice of the intended abandonment was given . . . ." In her brief in this Court, she
argues Helm's "status as a nursing home patient is irrelevant, as none of the wrongful actions
alleged involve any medical treatment." Because the trial court denied the motion to dismiss
and the appellate record is limited at this preliminary stage in the case, this Court should
presume for purpose of appellate review that the facts pled by plaintiff in the trial court are
true. 

 Some claims are based on acts separable from health care, and therefore are not
governed by Chapter 74. See generally Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d
842, 854 (Tex. 2005) (Statute applies to claims arising from acts or omissions "inseparable
from the provision of health care."); see also Garland Cmty. Hosp. v. Rose, 156 S.W.3d 541,
544 (Tex. 2004) ("If the act or omission alleged in the complaint is an inseparable part of the
rendition of health care services, then the claim is a health care liability claim."); Holguin v.
Laredo Reg'l Med. Ctr., L.P., 256 S.W.3d 349, 353 (Tex. App.--San Antonio 2008, no pet.)
(citing Rubio, 185 S.W.3d at 848); see also McAllen Work Rehab. Ctr. v. Gomez, No. 13-07-00466-CV, 2008 WL 2930306 (Tex. App.--Corpus Christi, July 31, 2008, pet. denied);
Omaha Healthcare Ctr., L.L.C. v. Johnson, 246 S.W.3d 278 (Tex. App.--Texarkana 2008,
pet. filed); Christus Health v. Beal, 240 S.W.3d 282 (Tex. App.--Houston [1st Dist.] 2007,
no pet.); Valley Baptist Med. Ctr. v. Stradley, 210 S.W.3d 770, 775-76 (Tex. App.--Corpus
Christi 2006, pet. denied); Shults v. Baptist St. Anthony's Hosp. Corp., 166 S.W.3d 502, 505
(Tex. App.--Amarillo 2005, pet. denied); Rogers v. Crossroads Nursing Serv., Inc., 13
S.W.3d 417, 420 (Tex. App.--Corpus Christi 1999, no pet.); Shannon v. Law-Yone, 950
S.W.2d 429, 437-38 (Tex. App.--Fort Worth 1997, writ denied). Leaving a nursing home
resident without food and water may be an act separable from health care. While a nursing
home does not merely provide shelter, food, and water, it does provide them, and its duties
concerning food, water, and shelter are not governed solely by health care industry standards. 
Plaintiff does not allege a health care decision was made that Helm should be denied food
and water; and plaintiff does not allege that Helm was given limited amounts of food and
water. She makes one different allegation, an extreme one asserting intentional conduct that
requires no expert testimony or report as to the standard of care. To the extent the trial court
denied appellant's motion to dismiss a claim possibly separable from health care, the trial
court did not abuse its discretion.

 This case presents a difficulty inherent in Chapter 74. Discovery is limited before a
motion to dismiss is filed under the statute, and the record is therefore limited on appeal. See
Tex. Civ. Prac. & Rem. Code Ann. § 74.351(s) (Vernon Supp. 2008). The pleadings
become paramount. (4) One of the claims made here is of an intentional injury. When
presented with a pleading that asserts different causes of action, some claims involving health
care and one that possibly does not, this Court should enforce the report requirement for
health care claims and remand any separable claim to the trial court for further proceedings. 
We have done that before and should do that here. See, e.g., Empowerment Options, Inc. v.
Easley, No. 09-06-148CV, 2006 WL 3239527, at *4 (Tex. App.--Beaumont, Nov. 9, 2006,
pet. denied) (alternative "intentional abuse claim"). 

 ___________________________

 DAVID GAULTNEY

 Justice


Dissent Delivered

April 23, 2009
1. Wheatley's First Amended Petition was virtually identical to her Original Petition
with the exception that Wheatley substituted Capstone Health Group, L.L.C. d/b/a Edgewood
Manor Nursing Home for NCM of Texas, Inc., d/b/a Edgewood Manor Nursing Home. 
Wheatley simultaneously filed a motion to restyle the proceedings requesting the court to
substitute Capstone Healthcare, L.L.C. for NCM of Texas, Inc. based on the sale of the
Edgewood Manor Nursing Home. The trial court granted this motion. 


 
2. Wheatley argues on appeal that expert testimony would not be needed to establish the
injury and ultimate death of a resident abandoned without notice and deprived of food and
water. We recognize that the necessity of expert testimony from a medical or health care
professional can be an important factor in determining whether a cause of action is an
inseparable part of the rendition of medical or health care services. See Diversicare, 185
S.W.3d at 848. However, the fact that expert testimony may not be necessary to support a
verdict at trial does not necessarily mean that a claim is not a health care liability claim under
Chapter 74. Murphy v. Russell, 167 S.W.3d 835, 838 (Tex. 2005). 
3. After the filing of the defendant's motion to dismiss, the plaintiff filed the second
amended petition. 
4. Appellant argues that we should consider the plaintiff's prior pleadings, because they
clearly assert a health care liability claim. See, e.g., Granek v. Tex. State Bd. of Med.
Exam'rs, 172 S.W.3d 761, 766 n.2. (Tex. App.--Austin 2005, no pet.). Those pleadings
have been abandoned by amendment. The question presented concerns the trial court's
refusal, at this stage, to dismiss the claim currently pled.