

NUMBER 13-11-00168-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**MADELYN HOLZMAN, M.D.,**                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                         **Appellee.**

**On appeal from the 94th District Court
of Nueces County, Texas.**

# DISSENTING MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Benavides
Dissenting Memorandum Opinion by Justice Benavides**

The Texas Supreme Court has issued two recent opinions, *Loaisiga v. Cerda*, 379 S.W.3d 248 (Tex. 2012), and *Texas West Oaks Hospital v. Williams*, 371 S.W.3d 171 (Tex. 2012), which take an expansive view of the Texas Medical Liability Act. Because the current case law from Texas's high court supports the propositions that

chapter 74 of the Texas Civil Practices and Remedies code trumps the other causes of action pleaded in this case, and that chapter 74 applies to the State of Texas, I dissent.

## I. BACKGROUND

The State of Texas, through the Office of the Attorney General, filed suit against Dr. Holzman when it discovered that her medical office discarded nearly two hundred medical files in a trash dumpster easily accessible to the public. The medical files contained sensitive personal health information, including full names, social security numbers, dates of birth, and medical conditions, of several of Dr. Holzman's patients and former patients. The medical conditions, in particular, revealed intensely personal information: these conditions included diagnoses for mental retardation; neurogenic bladder, or lack of bladder control; urinary tract infections; gross hematuria (blood in the urine); diabetes; incontinence; growths in the scrotum; and spermatocele, or scrotal cysts.

The State's lawsuit asserted causes of action under the Texas Deceptive Trade Practices Act (DTPA) and the Identity Theft Enforcement and Protection Act (ITEPA), claiming that Dr. Holzman promised, but breached, a statutory duty to implement and maintain reasonable procedures to protect her patients' personal information. *See* TEX. BUS. & COM. CODE ANN. §§ 17.01–.926; §§ 521.001–.152 (West 2011 & West Supp. 2011).

One-hundred twenty days after the State filed its suit, Dr. Holzman filed a motion to dismiss the lawsuit. Arguing that the State's lawsuit fell within the ambit of the Texas Medical Liability Act, Dr. Holzman contended that the case should be dismissed because of the State's failure to file a mandatory expert report as required by chapter

74. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). Dr. Holzman argued that the lawsuit was "within the purview of Chapter 74's limitation of health care liability . . . [which] controls over all other law, including each statute relied on by Plaintiff." *See id.* § 74.002 (West 2011) (providing that "in the event of a conflict between this chapter and another law . . . this chapter controls to the extent of the conflict."). The trial court disagreed that this case was a health care liability lawsuit and denied the motion to dismiss.

I would hold that the trial court erred in this regard, and would grant the motion to dismiss.

## II. WHICH STATUTE APPLIES

There are three statutes at issue in this lawsuit: the Texas Medical Liability Act (TMLA), the DTPA, and the ITEPA. By her first issue, Dr. Holzman claims that the trial court erred when it failed to recognize that this case is a health care liability claim under chapter 74 of the civil practice and remedies code and did not grant her motion to dismiss. I agree.

## A. Standard of Review and Applicable Law

"The characterization of a claim as a health care liability claim is a threshold question" in chapter 74 interlocutory appeals. *Pallares v. Magic Valley Coop.*, 267 S.W.3d 67, 70 (Tex. App.—Corpus Christi 2008, pet. denied). Whether a cause of action is a health care liability issue is reviewed de novo. *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011).

It is well-settled law in Texas that a "health care liability claim cannot be recast as another cause of action to avoid the requirements of the [medical liability act]." *See*

3

*Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex. 2005) (providing that courts are not "bound by niceties of pleadings. . .").  "When the essence of the suit is a health care liability claim, a party cannot avoid the requirements of the statute through the artful pleading of his claim."  *See Sloan v. Farmer*, 217 S.W.3d 763, 767 (Tex. App.—Dallas 2007, pet. denied) (citing *Diversicare*, 185 S.W.3d at 848; *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 543 (Tex. 2004); *MacGregor Med. Ass'n v. Campbell*, 985 S.W.2d 38, 40 (Tex. 1998)).  The same underlying set of facts cannot give rise to separate DTPA, ITEPA, and health care liability claims.  *See Yamada v. Friend*, 335 S.W.3d 192, 197 (Tex. 2009).  If the same facts give rise to claims under multiple statutes or common-law torts, "then the [TMLA] and its procedures and limitations will be effectively negated."  *Id.*; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 74.002 (providing that "in the event of a conflict between this chapter and another law . . . this chapter controls to the extent of the conflict.").

Whether a case falls under chapter 74 requires an examination of the underlying nature of the claim.  *See Sorokolit v. Rhodes*, 889 S.W.2d 239, 242 (Tex. 1994).  "If the act or omission that forms the basis of the complaint is an inseparable part of the rendition of health care services, or if it is based on a breach of the standard of care applicable to health care providers, then the claim is a health care liability claim."  *Sloan*, 217 S.W.3d at 767 (citing *Garland Cmty. Hosp.*, 156 S.W.3d at 544).  The claim must have three elements.  *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 662 (Tex. 2010).  First, a physician or healthcare provider must be the defendant.  *Id.*  Second, the suit must be about a "claimed departure from accepted standards of . . . professional or

4

administrative services directly related to health care." *Id.* Third, the defendant's act or omission departure must proximately cause the patient's injury or death. *Id.*

**B.      Rebuttable Presumption in Health Care Liability Claims**

Recently, the Texas Supreme Court handed down *Loaisiga v. Cerda* and reaffirmed that "the broad language of the [TMLA] evidences legislative intent for the statute to have expansive application." 379 S.W.3d 248 (Tex. 2012). Importantly, the high court announced in this case that "the breadth of the statute's text essentially creates a presumption that a claim is a [health care liability claim] if it is against a physician or health care provider and is based on facts implicating the defendant's conduct during the patient's care, treatment, or confinement". *Id.* at 256. This presumption is rebuttable, however. *Id.* For example, the supreme court noted that, "in some instances the only possible relationship between the conduct underlying a claim and the rendition of medical services or healthcare will be the healthcare setting . . . , the defendant's status as a doctor or health care provider, or both." *Id.*

The underlying case appears to meet all of the criteria for a chapter 74 claim. *See Marks*, 319 S.W.3d at 662. First, the defendant, Dr. Holzman, is a health care provider or physician. *See id.* Second, the State's claim is that Dr. Holzman had a duty to keep her patients' information private and dispose of it in a proper, lawful way, and that Dr. Holzman departed from that duty. *See id.*; *Sloan*, 217 S.W.3d at 767 (holding, in case where a treating physician released health information to a patient's employer, that a physician's "duty of confidentiality is inseparable from the health care services to be provided, and the claimed breach necessarily implicates the standard of care.").

The majority focuses on the third element for a chapter 74 claim, that of injury. *See Marks*, 319 S.W.3d at 662. I believe that Dr. Holzman's failure to protect her

patients' medical records injured her patients' privacy rights by revealing sensitive personal and medical data. Admittedly, as the majority notes, there is nothing in the record documenting that any confidential information fell into the hands of third parties. It is obvious, however, that someone found these patient records—otherwise this lawsuit would not have materialized. The dangers of revealing full names, social security numbers, and dates of birth are well-documented. Disclosure of this information can lead to significant personal and financial ruin in the form of identity theft, credit card theft, and worse. *See, e.g., Tex. Comptroller of Pub. Accounts v. AG of Tex.*, 354 S.W.3d 336, 345 (Tex. 2010) (recognizing that "[i]t is universally agreed that social security numbers are at the heart of identity theft and fraud, and in today's Internet world where information . . . can be instantly and anonymously obtained by anyone with access to the worldwide web, the danger is even greater"). Furthermore, third parties learning about personal medical conditions involving mental or reproductive health issues can cause severe embarrassment or mental anguish. These types of injuries are foreseeable if a patient's medical records are not properly stored or destroyed.

Because *Loaisiga* presumes that chapter 74 applies in cases involving physicians or health care providers and their conduct, here, I would presume that Dr. Holzman's patients were injured when their records were carelessly discarded in a trash bin accessible to the public. *Loaisiga*, 379 S.W.3d at 256. This presumption was not rebutted by the State. *Id.* Because all of the elements of a "health care liability claim" are met, *see Marks*, 319 S.W.3d at 662, I would hold that chapter 74 applies.

6

## C.	Definition of a "Person" Under Chapter 74

The State argues, however, that chapter 74 should not apply to it because it is not a "claimant" under the meaning of the TMLA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(2). A "claimant," under the statute, is "a person, including a decedent's estate, seeking or who has sought recovery of damages in a health care liability claim." *Id.* The State contends that it is not a "person" under the statute. Instead, it asserts that it brought this lawsuit in its capacity as a sovereign entity to protect Texas patients and their private medical information.

Here again, I rely on another recent supreme court case. *Texas West Oaks Hospital v. Williams* expanded the meaning of a "claimant" under the TMLA. 371 S.W.3d at 175. In *Texas West Oaks*, a mentally ill patient, Mario Vidaurre, died at Texas West Oaks Hospital, a private mental health facility. *Id.* One of the hospital's technicians, Frank Williams, was injured in the events leading to Vidaurre's death. *Id.* Vidaurre's estate sued Texas West Oaks and Williams, and Williams countersued Texas West Oaks for failing to properly train, supervise, and protect its employees. *Id.* West Oaks filed a motion to dismiss on the grounds that Williams's claims constituted health care liability claims and he failed to serve an expert report. *Id.* at 175–76; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). Williams contended that his claims were grounded in strict negligence and that his claims as an injured worker "'flow[ed] from the employment relationship' between Williams and West Oaks and [were] not 'directly related' to health care." *Tex. W. Oaks*, 371 S.W.3d at 176.

The Texas Supreme Court disagreed. In its opinion, it explained as follows:

"Person" is not defined in the [Texas Medical Liability Act] and therefore must be given its common law meaning. Changing the term "patient" to

7

"claimant" and defining "claimant" as a "person" expands the breadth of [health care liability claims] beyond the patient population. This in turn necessarily widened the reach of the expert report requirement . . . .

*Id.* at 178 (internal citations omitted). In sum, the court concluded that the TMLA "does not require that the claimant be a patient of the health care provider for his claims to fall under the Act, so long as the Act's other requirements are met." *Id.* at 174.

As previously stated, I believe that chapter 74's "other requirements are met" in the underlying case. *Id.*; *see Marks*, 319 S.W.3d at 662. The State, although not a "person" or a "patient", can be considered a "claimant" under the proper application of *Texas West Oaks*. Accordingly, chapter 74 should apply to the State.[1]

## D.    Conclusion

Because the presumption that this case is a health care liability claim has not been rebutted, *see Loaisiga*, 379 S.W.3d at 256, and the State is a "claimant" under the statute, *see Tex. W. Oaks*, 371 S.W.3d at 178, I would hold that chapter 74 applies to this lawsuit. Accordingly, the State was required to have produced an expert report within one-hundred twenty days after the lawsuit was filed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). I would sustain Dr. Holzman's first issue.

## III. ATTORNEY'S FEES

Dr. Holzman also claims that she is entitled to attorney's fees because the State failed to file an expert report under section 74.351(b). Because I conclude that chapter 74 applies in this matter, I would also sustain Dr. Holzman's second issue.[2]

---

[1] I would also point out that the Code Construction Act lends support to the notion in *Texas West Oaks Hospital* that a "person" can mean a "corporation, organization, government, or governmental subdivision or agency . . . ." TEX. GOV'T CODE ANN. § 311.005(2) (West 2005).

[2] In the motion to dismiss, Dr. Holzman's attorney, Van Huseman, included an affidavit and a copy of his firm's billing records. The State objected to the affidavit. However, the record does not reveal whether the trial court considered the affidavit at issue in this case or the objections filed in response to it.

8

## IV. Conclusion

Because I believe the majority failed to apply recent Texas Supreme Court law that makes chapter 74 applicable to this case, I would reverse the trial court's judgment and grant Dr. Holzman's motion to dismiss.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
31st day of January, 2013.

---

For this reason, I would remand this issue to the trial court for disposition on the attorney's fees issue.